**UNITED STATES ex rel. Sam JIGGETTS, Petitioner-Appellant,**

v.

**Harold W. FOLLETTE, Warden, Green Haven State Prison, Stormville, New York, Respondent-Appellee.**

**No. 634, Docket 35540.**

United States Court of Appeals, Second Circuit.

Argued Feb. 17, 1971.

Decided June 21, 1971.

Allan A. Pines, New York City, for petitioner-appellant.

Stephen P. Seligman, Deputy Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before LUMBARD, SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Sam Jiggetts appeals from the denial of his application for a writ of habeas corpus by the United States District Court for the Southern District of New York, Irving Ben Cooper, J., 308 F.Supp. 468. The trial court, however, granted a certificate of probable cause and this appeal followed. For reasons set forth below, we affirm.

In January 1959, after a jury trial in County Court, Kings County, appellant was convicted of burglary in the first degree, attempted rape in the first degree, two counts of assault, and pos-

session of a dangerous weapon as a felony. There was a question as to appellant's competency and, after being committed to Matteawan State Hospital, appellant ultimately had two sanity hearings. After the second one, and as a second felony offender, appellant received a 40–60 year sentence on the burglary conviction, 15–20 years on the conviction for attempted rape, and lesser sentences on the other charges. The convictions were unanimously affirmed without opinion. 23 A.D.2d 967, 259 N.Y.S.2d 813 (2d Dep't 1965). Leave to appeal to the New York Court of Appeals was denied.

After a number of attempts to obtain post-conviction reversal of his conviction, appellant brought the present action in the federal district court in July 1969. He originally raised eight claims, three of which were denied for failure to exhaust state remedies. The remaining five were considered by Judge Cooper and rejected on the merits. On this appeal only three of these rulings are under attack. Appellant argues that (1) certain oral statements he made shortly after his arrest were involuntary, and the district court erred in holding to the contrary without a hearing on the ground that appellant had waived any objections thereto; (2) appellant was insane at the time of trial, and the district court erred in holding that the state court hearings on the issue were full and fair; and (3) the conviction of appellant of the crime of attempted rape without corroboration where the evidence proved a consummated rape was unconstitutional. Only the first of these arguments requires discussion.

According to the testimony at the trial in the state court, the jury could have properly found that on October 12, 1958, appellant crawled through the window of the apartment of one Lois Carswell at 3:00 A.M., stood by her bed holding a kitchen knife belonging to her, and then forced her to have sexual intercourse with him. A few hours after appellant left, Miss Carswell complained to the police, identifying appellant, whom she

knew. Appellant was picked up and interrogated in the police station from 7:00 A.M. to 1:00 P.M. At first appellant denied knowing the complainant and said that he was home in bed with his wife at 1:00 A.M. that morning. Eventually appellant's wife was brought to the police station, and appellant was confronted with her statement that he had not arrived home that night until 4:00 or 5:00 A.M. At that point the following interchange took place, in the words of Detective Gibson testifying at trial:

> I said, "Are you going to tell us the truth now, Sam?"
>
> Sam says, "All right. I will tell you the truth."
>
> "Did you go into Carswell's house? A. Yes.
>
> "How did you get into the house? A. I went through the window.
>
> "Well, what did you go in there for? A. I went in to get laid.
>
> "Well, did you force her? A. No.
>
> "What do you mean you didn't force her? A. I didn't force her. She done it willingly.
>
> "Well, why did you go through the window?"
>
> He shrugged; no answer.

Defense counsel thereupon moved to strike this testimony on the ground that defendant did not "make any admission of guilt to these charges here." The motion was denied.

Appellant now says that the evidence was inadmissible because his statements to the detective were coerced and involuntary. This claim is based principally upon the length of the questioning, alleged denial of food and water, lack of counsel, an alleged promise of psychiatric treatment, alleged threats to lock up appellant's wife, and the latter's concern over the welfare of their two small children if that occurred.

Judge Cooper held that this argument could not avail appellant in the federal court because it had been waived by failure either to object to the evidence on this ground at the state court trial or to make the claim of involuntary confession on direct appeal. The judge characterized the failure to object at trial as deliberate trial strategy on the part of defendant. Thus, the judge pointed out, 308 F.Supp. at 470:

> The evidence in this case consisted of the testimony of the complaining victim and of the detective to whom petitioner made his statement, as well as the statement itself. His statement admitted that he entered the victim's first floor apartment through a window in order to have sexual relations with her, but insisted that he used no force and that she submitted willingly. * * *
>
> This statement was consistent with petitioner's apparent trial strategy. At no time did he attempt to establish that he had not entered the victim's apartment and had relations with her. Instead he chose to contend that he was invited by the victim and that she engaged in intercourse voluntarily. Petitioner's counsel made strategic affirmative use of this statement by stressing that petitioner denied use of force from the outset, even while admitting his presence at the complainant's house. * * *
>
> It is evident that not actively contesting the fact of having had intercourse with the victim, he saw no purpose to contesting the receipt into evidence of his admissions, preferring instead to seek to minimize the potential importance which the jury might assign to such admissions (if he sought to object to their introduction) by concentrating on his argument that no force was employed; that such was the position he took in his statements to the police and that these admissions were therefore irrelevant and immaterial. [References to record omitted.]

Quoting familiar language from Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and citing our *en banc* decision in United States ex rel. Vanderhorst v. LaVallee, 417 F.2d 411 (2d Cir. 1969), cert. denied, 397 U.S. 925,

90 S.Ct. 930, 25 L.Ed.2d 105 (1970), appellant vigorously attacks this ruling by the district judge. Appellant claims that a finding of deliberate bypass is not justified and, in any event, should not have been made without an evidentiary hearing. Respondent rejoins with numerous arguments and citations, including Henry v. Mississippi, 379 U.S. 443, 85 S. Ct. 564, 13 L.Ed.2d 408 (1965), and United States ex rel. Agron v. Herold, 426 F.2d 125 (2d Cir. 1970). The questions raised by the parties are substantial, as the sharp split of the *en banc* court in *Vanderhorst, supra,* indicates. However, we do not think we have to decide such difficult questions as whether defense counsel followed a deliberate trial strategy; if he did, whether Jiggetts had to agree to it; and if so, whether he did; and whether Jiggetts was entitled to an evidentiary hearing as to his statements and, if so, whether it would be on voluntariness, or on deliberate bypass, or on both. See Gibbons, Waiver: The Quest for Functional Limitations on Habeas Corpus Jurisdiction, 2 Seton Hall L.Rev. 291 (1971). Careful examination of the record of the state court trial convinces us that any error in admitting Jiggetts's conversation with the detective was harmless.

The first witness at appellant's state court trial was the complaining witness. She testified on direct examination that appellant had forced her to have sexual intercourse with him. On cross-examination, counsel for Jiggetts clearly adopted the strategy of showing that the sexual relations had been by consent. Thus, he forced the complaining witness to admit that she knew appellant and his wife, that she did not cry for help at any time, that she was on welfare, and that she could lose her relief payments if it was proved that she was sleeping with men. During the cross-examination, the following ensued:

Q. Isn't it a fact that you invited him to this couch to have intercourse with you? A. Is it? No, sir.

\* \* \* \* \* \*

Q. Isn't it a fact that before you actually had an act of intercourse with him, you and this defendant were sitting on the couch and you were playing around with his private parts? A. No.

Q. That didn't happen. Isn't it a fact that you met this defendant in the early part of that day, when he was going along the street carrying a couple of bottles of whiskey or wine in a bag? A. Ten o'clock that night.

Q. Ten o'clock that night. And isn't it a fact that you spoke to him at that time and asked him where he was going with that stuff? A. I didn't ask him. He asked me.

\* \* \* \* \* \*

Q. Didn't you kiss him? A. He kissed me. He grabbed me.

Q. Did you kiss him? A. I had to. He had his mouth there. He was holding me tight. What am I going to do?

Q. I don't want you to do anything, lady. Did you kiss him or didn't you? A. He grabbed and kiss me. He slobbered all over me.

From the above it appears that in the effort to show that the witness in no way objected to having sexual intercourse with appellant, defense counsel in effect conceded that appellant had been in the complainant's apartment when she said he was and did have sexual relations with her. Therefore, the later testimony by the detective as to what appellant had said to him was essentially duplicative. The only information it added to what defense counsel assumed as fact was that appellant had entered "through the window." This was not crucial since appellant had obviously entered in some way at that strange hour, after complainant had gone to bed. Appellant's claim was that his continued stay and his actions thereafter were with the complainant's consent. Of course, if the jury had accepted that view, it would have acquitted. On this theory, however, the evidence as to what appellant told the detective was

not harmful.[1] Although we would not ordinarily regard as harmless error admission of a defendant's statement assumed to have been improperly obtained, there are rare situations when that can be so. United States ex rel. Moore v. Follette, 425 F.2d 925 (2d Cir.), cert. denied, 398 U.S. 966, 90 S.Ct. 2180, 26 L.Ed.2d 550 (1970), was such an instance. We think that this is another. Accordingly, if error there was—and we do not decide that issue—it was harmless.

We have carefully considered appellant's other arguments, and as to them we affirm on Judge Cooper's opinion.

Judgment affirmed.

I. Appellant's counsel in effect admitted as much by objecting to the testimony on the ground that defendant did not "make any admission of guilt."