THE STATE OF OHIO, APPELLEE, *v.* EDGELL, APPELLANT.

[Cite as State v. Edgell (1972), 30 Ohio St. 2d 103.]

(No. 71-106—Decided May 17, 1972.)

**104**

*Mr. Lucien C. Young, Jr.*, prosecuting attorney, for appellee.

*Mr. Neal S. Tostenson* and *Mr. Fred F. Fox*, for appellant.

SCHNEIDER, J. Matthew Zilka, for whose murder appellant was convicted, was missing for nearly 60 hours when appellant, accompanied by his girl friend and his brother, turned up in possession of decedent's automobile.

Acting on information given them by witnesses who saw decedent's car on the highway, the Guernsey County authorities arrested the three in front of a tavern in Pleasant City, Ohio. At that time, the police found in appellant's wallet Zilka's gasoline credit card, driver's license, social security card and the automobile license registration. Appellant's army uniform impressed with blood stains was found in the car. The decedent's empty wallet was found in the glove compartment. Zilka carried $135 when he left his home for work two mornings previously.

In the trunk of the automobile, the authorities found a lunch pail with an untouched lunch in it, some work clothing and a pair of boots, all the property of Zilka.

Upon being taken to the Guernsey County sheriff's office at about 7:00 p. m. the officers, alarmed as to the whereabouts of Zilka, started the questioning of appellant, which continued intermittently until sometime late in the afternoon of the following day, at which time he finally admitted that while he had been hitchhiking he was picked up by the decedent.

In the words of the sheriff of Guernsey County, who testified at the trial:

". . . He said he got into an argument and he stabbed him. At that time he told me he stabbed him twice; and

he had tied him up, and he told me it was in the area of State Route 340; and at that time I knew it was in Noble County, so . . . I did ask him if he got the money from Mr. Zilka at that time. He said, yes, he did, and I asked him how much, and he said he thought it was around $148 . . . I then asked him if he would go with us to where he had laid the body. . . . [Search parties had been organized and were searching all that afternoon in the general area where Zilka was last seen driving, two days before, but without success.] At first he said he didn't think he wanted to go, and I asked him a couple more times and he said he would go. . . . When we got there Samuel [Edgell] was taken out of the car at the scene after we had found the place, and he showed us just where the area was, and he walked with us to the body in the direction, and I was slightly ahead of him there and I noticed the body, and then the coroner had taken over.''

The body was found in thick underbrush approximately 100 yards from the road, gagged, bound, and stabbed five times, once through the heart.

All of the foregoing evidence at the *trial* was unimpeached and uncontroverted. Defense counsel interposed no objection whatsoever to any of the testimony of the sheriff of Guernsey County, part of which has been quoted, even though no evidence was offered at the *trial* that the defendant, prior to making the quoted oral statement, was informed of his constitutional rights as prescribed by *Miranda* v. *Arizona* (1966), 384 U. S. 436. Moreover, defense counsel ventured no cross-examination whatsoever of that sheriff.

There is no evidence anywhere in the *trial* record that appellant demanded counsel, that he consulted with any other person, that he was denied normal food or sleep, that he was in any way threatened with bodily harm, or that any hope of reward or gain was extended to him.

Although we held in *State* v. *Kassow* (1971), 28 Ohio St. 2d 141, that prior to the use of an in-custodial statement against the accused in its case in chief, the state has

the burden of proving that the accused waived his right not to make the statement, and that the right to object to the state's failure of that burden is not waived by the failure to file a pre-trial motion to suppress, in no case have we held, nor do we perceive that *Miranda* so holds, that such objection is not waived by the failure of defendant, with the presence and assistance of counsel at a trial commenced since *Miranda*, to interpose an in-trial objection to the admission of the statement.[1]

---

[1] In *Miranda* v. *Arizona* itself, as well as one companion case, *Vignera* v. *New York*, an in-trial objection to the confession was made. As to *Westover* v. *United States*, another companion case, the court said in footnote 69, 384 U. S., at page 495: "The failure of defense counsel to object to the introduction of the confession at trial . . . does not preclude our consideration of the issue. Since the trial was held prior to our decision in *Escobedo* and, of course, prior to our decision today in making the objection available, the failure to object at trial does not constitute a waiver of the claim. . . ." We interpret this as a warning that henceforth from the date of that decision the failure to make an objection on the basis of *Miranda*, at or before trial, constitutes a waiver of a claim of a *Miranda* transgression. See *United States* v. *Armetta* (C. A. 2, 1967), 378 F. 2d 658.

We have found no other United States Supreme Court case, including those cited in the dissenting opinion herein, in which it was noted that no objection was made to the questioned evidence. In three cases, objection was made by way of cross-examination (*Jackson* v. *Denno* [1964], 378 U. S. 368), motion to strike (*Lynumn* v. *Illinois* [1963], 372 U. S. 528), and motion to suppress (*Sims* v. *Georgia* [1967], 385 U. S. 538).

In New York, the heavy burden is cast upon the state to prove not only the waiver as prescribed by *Miranda* of the right not to make an in-custodial statement, but that the statement itself was not induced by actual coercion in violation of the common law "confession rule." Cf. *State* v. *Kassow, supra* (28 Ohio St. 2d 141). Yet, New York requires the state to notify the defense if an alleged confession will be offered at the trial, upon receipt of which the defense must, if it intends to attack the confession as involuntary, notify the prosecutor of its desire for a preliminary hearing on that issue. *People* v. *Huntley* (1965), 15 N. Y. 2d 72. Compare the Ohio Rule of Criminal Procedure 12(D) and (G), as proposed by the Criminal Rules Advisory Committee of this court (XLIV Ohio Bar 1200, No. 39, October 11, 1971, and as submitted to the General Assembly by this court (XLV Ohio Bar 424, No. 13, March 27, 1972).

As we have shown, such failure occurred at the trial of this case, and the appellant does not here, nor did he in the Court of Appeals, claim error in the admission of the testimony of his oral statement.[2] Rather, his claim of error of constitutional proportions against him is directed solely to the introduction, as evidence in the state's case, of a tape-recorded statement taken personally by the prosecuting attorney of Noble County, to which he was removed after the body was discovered there. His pre-trial motion to suppress, *directed solely to that statement*, was overruled after a preliminary hearing at which appellant testified. (He did not take the stand at his trial.)

The critical part of the transcript of the tape-recording session occurs at the beginning and is reprinted in the footnote.[3] Were it not for the fact that the tape was inter-

---

[2]This case illustrates the absolute necessity, in the opinion of the majority, of a party calling to the particular attention of any court that known right or privilege which he asserts or of which he claims to have been deprived.

Had the attention of the trial court in this case been called to the claimed inadmissibility of appellant's Guernsey County statement at any time prior to its introduction, the trial court might have excluded it as well as the sheriff's testimony that appellant revealed the location of the body. In this event appellant may well have been discharged for failure of the prosecution to prove either the *corpus delicti* of the homicide or the identity of the person involved therein or both. Thus, the necessity of a trial and two appeals would have been avoided.

[3]"Prosecutor Young: You don't need to talk any louder than you have been. I have gone over this with you before, but I will go over it again to make sure there is no misunderstanding. Now, you have the right to remain silent. You also have the right to have a lawyer and to have that lawyer here when you talk with us, if you talk with us at all, and I want you to know that the things you say here may be used against you, and if you can't afford a lawyer, that the county will hire one for you. Now, understanding all that, do you want to go ahead and talk with us and get off your chest what happened?

"Edgell: I want to see a lawyer sometime.

"Prosecutor Young: Alright, you certainly may see one, but do you want to—are you ready to go ahead and talk with us? Do you want to get ahold of a lawyer now?

rupted for an indeterminate time, we would have no hesitation in upholding the trial court's decision to overrule the motion to suppress the taped statement. The evidence would amply support a finding that appellant was not abused, threatened, pressured or coerced in any way in Noble County. As to Guernsey County, his answer to a question on cross-examination, "Did, did they [the Guern-

---

"Edgell: I can't afford one now.

"Prosecutor Young: Well, the county will hire one for you. I want you to understand that.

"Edgell: Before I say anything, I would like to know what exactly the charges is?

"Prosecutor Young: Well, right now, we haven't filed any charges against you, but you killed a man. At least that's what you told us. And, depending on your story, it will be some type of a charge. It could be anywhere from manslaughter to murder; and so right now I can't tell you what the charge is that we will file against you. It sounds to me like second degree murder; but I want to make it clear that that's just a guess on my part from what I have heard. I want you to know that—well, do you want to go ahead now and tell us your story and get it off your chest?

"Edgell: What does second degree murder—what does it touch, I mean how much—what's the penalty on it?

"Prosecutor Young: I don't know, let me check here.

"(At this time the tape recorder was turned off while Mr. Young looked up the statute for Mr. Edgell.)

"(Tape continues)

"Prosecutor Young: Now, try to speak a little louder. *We have had the tape recorder off here for quite a while, and we've talked with you.* [Emphasis supplied.] Now, I understand that you are willing to give us a statement. Is that correct?

"Edgell: Yes.

"Prosecutor Young: You understand now that you have the right to remain silent. You don't have to give us this statement, and it may be that if you decide to tell us anything, these can be used against you. You have the right to have a lawyer, and if you can't afford a lawyer, you have the right to have the county hire one for you, and you have the right to have that lawyer present. Now, do you understand all those things? You are shaking your head yes, say yes.

"Edgell: Yes.

"Prosecutor Young: Alright, fine. Now, knowing all those things, do you want to go ahead and give us a statement?

"Edgell: Yes, I'll give you one."

sey County officials] mistreat you in any way?" was, "No, not other than telling me my fiancee was gonna be locked up in jail." But he admitted that "Noble County didn't say nothing to me—Guernsey County already told me that [referring to his fiancee] and I just gathered that Noble County was going with Guernsey County."

Even assuming that this claim of coercion should have been believed by the fact trier, we need not consider whether it was sufficient to affect either the voluntariness of the Guernsey County statement or the waiver of the right not to make it. But, see *Phillips* v. *State* (1966), 29 Wis. 2d 521. The issue on the motion to suppress was the voluntariness of the *Noble County statement* and the waiver of the right not to make it. That appellant "just gathered" that the same threat or promise, if in fact made, carried over to Noble County is insufficient in law to affect the validity of the statement there made.

Nor is the tape-recorded statement invalid for the reason that appellant did not expressly state his willingness to answer without the services of an attorney. See *State* v. *Matt* (1968), 251 Ore. 134, 136, and *Bond* v. *United States* (1968), 397 F. 2d 162. Appellant did not indicate on the tape in any manner that he wished to consult counsel before speaking at the recording session. *Miranda* v. *Arizona, supra* (384 U. S. 436, at 444-445).

However, we do hold that the interruption of the tape at the acute point where appellant was being questioned and warned respecting his desire for the services of counsel was a transgression of the *Miranda* rule and fatal to its use upon objection by the appellant. (He registered that objection by pre-trial motion to suppress.) The interruption was particularly crucial in that the tape itself indicates that the interruption was "for quite a while, and we've talked with you." What transpired during the interruption was not satisfactorily explained by the prosecution.

On the other hand, appellant's recorded statement which followed does not materially differ from the oral statement related at the trial by the Guernsey County

sheriff. The former merely explains that the argument arose over appellant's request that Zilka drive him to Parkersburg, West Virginia, in payment of $30. It further explains that a knife appeared, that appellant stabbed Zilka in an attempt to defend himself, that he threw the knife away after the stabbing, and that after leaving the body in the place to which he subsequently led the police, he proceeded in the automobile to West Virginia, picked up his girl friend and then went to Massillon where his brother joined them.

As we have indicated, apart from the tape, the unchallenged evidence against appellant "was so overwhelming" (*Commonwealth* v. *Witherspoon* [1971], 442 Pa. 597, 277 A. 2d 827) that "conviction was inevitable" (*Moore* v. *Follette* [1970], 425 F. 2d 925) beyond a reasonable doubt, as was the failure to recommend mercy. Therefore, we are satisfied that the error in failing to suppress the tape was harmless (*Chapman* v. *California* [1967], 386 U. S. 18) and that the Supreme Court of Pennsylvania was correct in concluding in *Commonwealth* v. *Padgett* (1968), 428 Pa. 229, "that the United States Supreme Court would hold that *Escobedo* and *Miranda* violations are subject to the *Chapman* rule.'"[4] See *Harrington* v. *California* (1969),

---

[4] An abstract of the reasoning of the Pennsylvania court, 428 Pa., at page 233, follows:

". . . Although *Chapman* did recognize the existence of the automatic reversal cases, it made no attempt to articulate the rationale separating those constitutional errors requiring automatic reversal from those to which the harmless error doctrine can be applied other than to classify the automatic reversal cases as involving 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error'. . . .

". . . Fortunately, however, later decisions strongly indicate that the United States Supreme Court has taken a position on the proper classifications of *Escobedo* and *Miranda*, and would hold that an *Escobedo* or *Miranda* error can be harmless. In *United States* v. *Wade* (1967), 388 U. S. 218, 87 S. Ct. 1926, drawing upon the premises of *Escobedo* and *Miranda*, it was held that a post-indictment lineup was a critical stage of the prosecution entitling the prisoner to the aid of counsel. . . . *Wade's* dependence upon *Escobedo* and *Miranda* is thus

395 U. S. 250; *United States* v. *Sutt* (C. A. 7, 1969), 415 F. 2d 1305; and *United States* v. *Smith* (C. A. 6, 1969), 418 F. 2d 223.

Appellant claims additional error in the trial court's refusal to grant the request of court-appointed counsel to withdraw on the basis that he and the appellant were unable to get along. Under the facts surrounding appellant's request, and especially since the request was made only four days before the date set for trial, we find no abuse of discretion in the trial court's ruling.

---

indicative that the harmless error rule can be applied to *Escobedo* and *Miranda* violations.

"This observation is confirmed by *Stovall* v. *Denno* (1967), 388 U. S. 293, 87 S. Ct. 1967, the decision determining the retroactivity-prospectivity of *Wade*. . . .

"We are therefore confronted with a decision indicating that the *Chapman* doctrine can be applied to lineup cases (*Wade*) and another decision holding that for purposes of retroactivity *Wade* presents considerations markedly similar to those of *Escobedo* and *Miranda* (*Stovall*). . . . it remains clear that one of the primary bases for both decisions is the degree of impact that the right involved has upon the fact-finding process. . . . When contrasted with the inherent unreliability of a conviction procured in the absence of counsel or on the basis of a coerced confession, a conviction obtained through use of an *Escobedo* or *Miranda* violation does not go to the very roots of fact-finding reliability, for such a statement may well be voluntary. Given the similarity of the principles governing retroactivity and those governing automatic reversal, the Supreme Court's decision that neither *Escobedo* nor *Miranda* are retroactive and its decision that a *Wade* violation does not require automatic reversal, we conclude that the United States Supreme Court would hold that *Escobedo* and *Miranda* violations are also subject to the *Chapman* rule, a conclusion we hereby follow."

An impeachment case, *Padgett,* was prior to, and did not have the benefit of, *Harris* v. *New York* (1971), 401 U. S. 222, so that *Padgett* is now superseded. But this does not destroy the validity of its reasoning. See *State* v. *Adams* (1970), 46 Ill. 2d 200, 263 N. E. 2d 490, affirmed, *Adams* v. *Illinois* (1972), U. S. , 31 L. Ed. 2d 202. (*Coleman* v. *Alabama* [1970], 399 U. S. 1, held not retroactive.) See, also, *Schneble* v. *Florida* (1972), 92 S. Ct. 1056 (admission of co-defendant's statement, even if in violation of *Bruton* v. *United States* [1968], 391 U. S. 123, held harmless error).

We affirm the judgment of the Court of Appeals.

*Judgment affirmed.*

HERBERT, CORRIGAN and LEACH, JJ., concur.
O'NEILL, C. J., and STERN, J., dissent.
BROWN, J., not participating.

O'NEILL, C. J., dissenting. I find the majority position inconsistent. On the one hand, they find the events occurring in Guernsey County irrelevant on both the *Miranda* and voluntariness issues, and on the other hand they find defendant's oral confession in Guernsey County the major support for a holding of harmless error. A determination of harmless error can only be predicated upon evidence or testimony which itself is constitutionally admissible. Moreover, as will be more fully developed herein, I dispute the majority's determination that the motion to suppress was directed solely to the taped statement.

Prior to trial, counsel for defendant moved to suppress the tape-recorded statement because it was not *voluntarily*, knowingly and intelligently made. The following facts were developed *at the hearing on that motion*:

Defendant was apprehended at approximately 6:30 p. m. on Friday, March 29, 1968, by a Guernsey County deputy sheriff. At approximately 7:20 p. m., the assistant Guernsey County prosecuting attorney advised defendant of his *Miranda* rights, and defendant stated: "I * * * [wish] to have an attorney before I make any statements." Defendant was told he could not have an attorney until the next morning. Instead of delaying the interrogation, the prosecutor asked defendant to sign a waiver card, which he did. Defendant was then interrogated by two prosecutors until approximately 11:00 p. m. that evening, with no apparent success.

After the prosecutors left, the Guernsey County Sheriff began questioning defendant (approximately 11:00 p. m.).

This interrogation continued for the better part of eight hours (until 7:00 a. m. Saturday morning), and elicited no incriminating admissions. Defendant was then returned to his cell until approximately 1:45 p. m. of the same day. At that time, the Guernsey County Sheriff began interrogating him again (counsel still had not been provided for him). During that interrogation, which lasted approximately three and one-half hours (until approximately 5:00 p. m.), the following occurred:

"A. * * * [The Guernsey County Sheriff] told me that unless I confessed to doing the crime he was gonna send my fiancee to reform school.

"Judge: He said what?

"A. He said unless I told him that I had committed the crime, he was going to send my, send my girl to reform school and hold my brother as an accomplice before and after the fact. I asked him * * * 'Well, how can I get out of sending her to reform school?,' and he said by stating you done it, that you committed the crime, and I told him I had to get my girl out of going to reform school, *and so I stated that I had done the crime*, and he prom— he told me that since I had made the statement, he wasn't going to * * * send her to reform school. He said he was gonna release her. * * *"

Defendant's fiancee (girl friend) was a minor.

All the above testimony is *uncontradicted*. The prosecutor did not attempt to controvert that testimony through the Guernsey County Sheriff, although the sheriff did testify at the hearing on the motion.

After the above transpired, the defendant orally confessed to the Guernsey County Sheriff. In the words of the Guernsey County Sheriff, "we *immediately* notified the sheriff here in Noble County and *told him what was happening*, and told him to notify the prosecutor here." (Emphasis added.)

Defendant led the Guernsey County authorities into Noble County where the body was. They were joined there by the Noble County Prosecuting Attorney and Sheriff. Af-

ter the body was discovered, defendant was immediately taken to the Noble County jail. Within an hour, defendant gave a question-and-answer-style, tape-recorded statement, implicating himself in the crime. In this statement defendant changed his position and stated that the crime was committed in self defense.

Near the beginning of this recorded statement the defendant requested the prosecuting attorney to turn off the tape recorder. The Noble County Prosecuting Attorney turned off the tape recorder. Then defendant requested an attorney. Instead of delaying until an attorney could be obtained, the prosecuting attorney, after an indeterminate time, turned the recorder on again and the defendant answered the prosecuting attorney's questions. Defendant testified that the following occurred when the recorder was turned off:

"A. * * * he turned it off because I told him that maybe, perhaps I had better talk to an attorney before I answered his questions. * * * he said if I did talk to an attorney that the attorney would tell me the same thing that he's ask me to say. And he said 'if you'll cooperate with us, we can cooperate with you and make it a lot easier for your stay here.' "

The Noble County Prosecuting Attorney testified at the hearing on the motion, and his testimony does not contradict defendant's testimony on this point. In view of that testimony, I do not understand why the majority says that "appellant did not indicate *on the tape* in any manner that he wished to consult counsel before speaking at the recording session." (Emphasis added.)

At the end of the recorded statement, the following occurred:

"Young [prosecuting attorney]: * * * Is there anything you want to add?

"Edgell: Yes, I'd like to add that my brother and my girl friend had nothing whatever to do with it."

Defendant testified that before the colloquy took place the recorder was turned off and he asked the prosecuting attorney:

"A. 'Now will this get my girl friend out of jail?' and he said, 'Well, you had better put to the effect that she had nothing to do with it on the tape recorder.' And he turned it back on and I stated that her and my brother did not have nothing to do with it."

This testimony is uncontradicted.

Continuing, the defendant testified:

"Q. Were you forced to give it [the taped statement]?

"A. In a sense, yes. Either I gave the statement or so they [Guernsey County Sheriff] told me, or my fiancee and my brother was gonna be put in jail."

Defendant testified further:

"A. *Well the Guernsey County Sheriff's office done told me they had enough proof against me to convict me, they said there was no use in me telling you [Noble County Prosecuting Attorney] anything other—.*" (Emphasis added.)

This testimony is also uncontradicted.

Based upon the uncontradicted testimony, given at the hearing on the motion to suppress, I find that: (1) the Guernsey County prosecutor unconstitutionally deprived defendant of the assistance of counsel; (2) any statements thereafter made by defendant were the product of "compulsion"; (3) certain coercive threats were made to defendant; (4) the totality of the circumstances surrounding the interrogation in Guernsey County were coercive; (5) the effect of the threats and coercive circumstances surrounding the interrogation in Guernsey County continued to and did affect defendant at the time he gave the tape-recorded statement in Noble County; (6) the Noble County Prosecuting Attorney unconstitutionally deprived defendant of the assistance of counsel; and (7) the tape-recorded statement is inseparable from all that preceded it.

The majority avoids discussion of the events that occurred in Guernsey County. They view the motion as directed solely to the voluntariness of the recorded statement. However, such a narrow view ignores what was actually in issue, developed, litigated and argued at the

hearing. While the motion literally challenged the voluntariness of the taped statement, at the hearing counsel for the defendant attempted to show that the taped statement was the direct product of defendant's involuntary oral confession in Guernsey County. Additionally, he attempted to show that defendant was denied the assistance of counsel in Guernsey County. Significantly, the prosecuting attorney attempted to prove compliance with *Miranda* even though the motion was directed to a voluntariness question. Such procedure by either counsel is expressly approved. See *State* v. *Kassow* (1971), 28 Ohio St. 2d 141, 144, 145.

Had the trial judge believed that the events in Guernsey County were no part of the motion, he would have limited the testimony solely to the circumstances surrounding the taking of the taped statement. This he did not do. Furthermore, neither counsel objected to any testimony concerning the events in Guernsey County. The absence of any objection indicates that counsel also believed those events to be in issue. Additionally, three witnesses, two of whom were called by the prosecution, testified about the events that occurred in Guernsey County.

In *Boulden* v. *Holman* (1969), 394 U. S. 478, the defendant argued that the events occurring shortly after his arrest directly contributed to his two later formal confessions. Neither the opinion of the District Court nor the opinion of the Court of Appeals explicitly referred to that evidence and it was argued that it must be assumed that those courts did not consider it. The majority was unable to assume that such evidence was not considered. Similarily, I am unable to assume that the trial judge did not consider the events occurring in Guernsey County when he ruled on the motion to suppress.

At the close of the testimony, counsel for defendant argued that "the waiver of counsel must be given voluntarily, knowingly and intelligently." The prosecuting attorney stated that counsel for defendant based his argument in part on the denial "of his constitutional rights because he wasn't given an attorney." The trial judge

acknowledged that *Miranda* was cited and that a *Miranda* question was in issue.

Counsel for defendant also argued that "the Noble County officials got the benefit of the long previous questioning that had taken place." He cited *Westover*[5] and *Haynes*[6]. The prosecuting attorney, after pointing out certain testimony, concluded: "For this reason, it is the contention of the prosecution that the statement was *voluntarily* made." Without distinguishing between the three parts of the motion, and without giving any reasons, the trial judge overruled the motion.

Thus, as the record shows, not only was the voluntariness of the taped statement in issue, but also the denial of the assistance of counsel in Guernsey County *and* the relationship of the oral confession in Guernsey County to the taped statement in Noble County. The trial judge's one ruling decided all these issues against defendant. It is this ruling which is challenged. A further indication that the prosecuting attorney thought the *Miranda* issue settled is the fact that he did not attempt to prove compliance with *Miranda* at trial.

While credibility is a matter to be resolved by the trial judge, there is *significance* in the *uncontradicted testimony* of defendant. This matter was discussed in *Haynes* v. *Washington* (1963), 373 U. S. 503, 510, as follows: "* * * no other evidence was presented to contradict the petitioner's testimony, either as a part of the prosecution's case in chief or, even more importantly, by way of rebuttal subsequent to petitioner's testimony. We cannot but attribute significance to the failure of the state * * * to

---

[5]*Westover* v. *United States* (1966), 384 U. S. 1436, involved both a *Miranda* question and a confession to federal officials who received the benefit of coercion applied by the local officials during in-custody interrogation.

[6]*Haynes* v. *Washington* (1963), 373 U. S. 503, held Haynes' confession involuntary because of continued incommunicado interrogation and harassment. Haynes was told he could not call his wife until he cooperated.

attempt to contradict that crucial evidence.'' See, also, *Rogers* v. *Richmond* (1961), 365 U. S. 534, 546. Because the testimony of the accused is uncontradicted, I accord *significance* to the prosecutor's failure *to attempt* to contradict it. See *Sims* v. *Georgia* (1967), 389 U. S. 404, 406.

Defendant testified that he requested counsel, and that the Guernsey County prosecutor told him none was available until the following morning. *Upon that representation,* he signed a waiver. When counsel was not provided the following morning, defendant was unconstitutionally deprived of the assistance of counsel.

In *Miranda* v. *Arizona* (1966), 384 U. S. 436, the court states, at page 474:

'' * * * If the individual states that he wants an attorney, the interrogation must cease until an attorney is present.'' Continuing, at page 475, *Miranda* states: ''If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. * * * This court has always set high standards of proof for the waiver of constitutional rights * * * and we reassert these standards as applied to in-custody interrogation.''

In the instant case, the prosecuting attorney has not sustained his *heavy burden* of proving that the defendant knowingly, intelligently and voluntarily waived his rights. In fact, the only clear inference to be drawn from the facts presented is that either the prosecuting attorney deceived defendant into waiving his rights because he never intended to furnish counsel at all, or that defendant was deprived of the assistance of counsel, at the latest, on Saturday morning when counsel was not provided. Moreover, when defendant asserted his right a second time (in Noble County) the prosecuting attorney talked him out of it. Such police conduct cannot withstand constitutional muster.

"Not even the slightest circumvention or avoidance may be tolerated. * * * Once the privilege has been asserted * * * an interrogator must not be permitted to seek its retraction, total or otherwise." *United States* v. *Crisp* (C. A. 7, 1971), 435 F. 2d 354, 357. See, also, *Brown* v. *State* (Ind. 1971), 270 N. E. 2d 751; *United States* v. *Smith* (C. A. 7, 1967), 379 F. 2d 628; *State* v. *Moon* (Iowa 1971), 183 N. W. 2d 644. Thus, I submit that the trial judge erred when, in ruling on the motion to suppress, he held that defendant was not denied the assistance of counsel.

The majority makes no finding, but merely assumes, that the taped statement is separable from all that preceded it. The facts belie such a conclusion. Not only was defendant denied the assistance of counsel in Guernsey County, but no more than five hours elapsed between the time the Guernsey County Sheriff threatened him and the time he made the taped statement. The record also shows that defendant orally confessed immediately after the threat. I find that the character or status of the taped statement is entirely dependent on the circumstances that produced the oral confession in Guernsey County. If the oral confession is inadmissible, there *must* be a determination that the taped statement does not suffer from the same defect. *Leyra* v. *Denno* (1954), 347 U. S. 556, 561 (where the relation is " 'so close * * * the facts of one control the character of the other' "); *Clewis* v. *Texas* (1967), 386 U. S. 707, 710 ("there is here no break in the stream of events * * * sufficient to insulate the statement from the effect of all that went before"); *Id. Darwin* v. *Connecticut* (1968), 391 U. S. 346, 349; *United States* v. *Bayer* (1947), 331 U. S. 532, 540 (once an accused has been induced to confess "a latter confession always may be looked upon as a fruit of the first"); *Westover* v. *United States* (1966), 384 U. S. 436, 496 ("thus, in obtaining a confession from Westover the federal authorities were the beneficiaries of the pressure applied by the local in-custody interrogation").

When the trial judge ruled the taped statement admissible, of necessity, he had to rule either that it was separable from all that preceded it or that the oral confession was not involuntary. It has already been shown that it is inseparable from all that went before.

Voluntariness is to be determined by reference to the totality of the circumstances. In each voluntariness case that the Supreme Court decided it analyzed at least the following factors: (1) The warning or failure to warn the accused of his right to assistance of counsel and his privilege to remain silent; (2) the presence or absence of an attorney; (3) the length of the incommunicado interrogation; (4) the physical acts and/or oral statements of the law enforcement officials; and (5) the relationship between the earlier and later statements or confessions.

It has already been shown that the Guernsey County prosecutor denied defendant the right to counsel, at the latest, on Saturday morning. Denial of the right to counsel, although not in itself coercive, is relevant in establishing whether coercion might have been exerted to overcome the will of the accused. *Procunier* v. *Atchley* (1971), 400 U. S. 446, 27 L. Ed. 2d 524; *Davis* v. *North Carolina* (1966), 384 U. S. 737.

The length of the uninterrupted interrogation, while quite long, was not unduly so. Moreover, defendant indicated no desire to cease the interrogation. Thus, it is a neutral factor.

The uncontradicted testimony of the defendant shows that the Guernsey County Sheriff made a most coercive and inducing threat to defendant, and it was only after that threat was made that defendant confessed. Coercion can be mental or psychological, as well as physical. See *Blackburn* v. *Alabama* (1960), 361 U. S. 199. Compare *Leyra* v. *Denno, supra* (347 U. S. 556), and *Spano* v. *New York* (1959), 360 U. S. 315 (feigned friendship of defendant by a person assisting the police); *Lynumn* v. *Illinois* (1963), 372 U. S. 528 (threat to take away defendant's children and cut off her welfare payments); *Rogers* v.

*Richmond* (1961), 365 U. S. 534 (threat to ''pick up'' defendant's wife); and *Harris* v. *South Carolina* (1949), 338 U. S. 68 (threat to arrest defendant's mother for receiving stolen property).

Those factors must be considered when a voluntariness question is presented to the court. The specific findings on each factor must then be referenced to the ''constitutional test'' of voluntariness, *i. e.*, ''whether the behavior of the state's law enforcement officials was such as to overbear * * * [defendant's] will to resist and bring about confessions not freely self-determined.'' *Rogers* v. *Richmond, supra* (365 U. S. 534, 544).[7] Taking the factors collectively, I find defendant's oral confession involuntary.

Additionally, because the time that elapsed between the oral confession and the taped statement was no more than five hours, I also find that the taped statement was the direct result of the earlier involuntary confession.

Equally erroneous was the prosecuting attorney's failure to show that the taped statement was *not* directly produced by the existence of the earlier confession. '' * * * when the prosecution seeks to use a confession uttered after an earlier one not found to be voluntary, it has * * * the burden of proving * * * that the later confession * * * was not directly produced by the existence of the earlier confession.'' *Darwin* v. *Connecticut, supra* (391 U. S. 346, 351, Harlan, J., concurring and dissenting). That rule was adopted by the majority in *Harrison* v. *United States* (1968), 392 U. S. 219. Accord, *State* v.

---

[7] Though no objection was made thereto, the prosecutor inquired of the truth or falsity of the confession. Such a procedure is expressly prohibited. See *Lego* v. *Twomey*, U. S. , 40 L. W. 4135, 4138, n. 12. (''The real issue in such a hearing is whether a confession was coerced. Whether it be true or false is irrelevant; indeed, such an inquiry is forbidden.'')

Had the trial judge considered its truth or falsity when he ruled the confession admissible, this would have been reversible error. See *Rogers* v. *Richmond, supra* (365 U. S. 534). However, no such claim is made and we need not consider it.

*Bryson* (1970), 22 Ohio St. 2d 224, 230. Contra statements in the opinion, but not in the syllabus, in *State* v. *Kassow* (1971), 28 Ohio St. 2d 141, 146. Compare *Lego* v. *Twomey* (1972), U. S. , 40 L. W. 4135 ("the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary"); *Arrington* v. *Maxwell* (C. A. 6, 1969), 409 F. 2d 849 (finding that the Ohio law on voluntariness was in conflict with *Jackson* v. *Denno* [1964], 378 U. S. 368). Nowhere in the instant case did the prosecuting attorney even attempt to satisfy this burden.

Motivation, volition and representation by counsel in the intervening period between the oral confession and the taped statement are important factors in determining whether the latter is the product of the former.[8] However, the lack of opportunity to reflect, the further subjection to police pressures, the failure to dispel the fear created by the threat, the short time period between the oral confession and taped statement, and the subsequent denial of counsel bespeak of no other motive than fear. Moreover, the existence of fear precludes the existence of volition. Thus, nothing occurred in the intervening period to insulate the taped statement from all that occurred before. Clearly, the oral confession and the taped statement were one interconnected event, and both should have been suppressed on that ground. *Miranda* v. *Arizona, supra* (384 U. S. 436); *Rogers* v. *Richmond, supra* (365 U. S. 534); *Harrison* v. *United States, supra* (392 U. S. 219).

Finding that both the oral confession and taped statement should have been suppressed because of both their involuntary nature and because of *Miranda* violations, I do not find counsel's failure to object at trial a serious omission. Had the trial judge ruled correctly on the motion, the Guernsey County Sheriff could not have testified to defendant's oral confession. *Bram* v. *United States* (1897), 168 U. S. 532, 541 (" 'the rule excludes not only direct con-

---

[8]*State* v. *Bryson, supra* (22 Ohio St. 2d 224), at 228, 230.

fessions, but any other declarations tending to implicate the prisoner' ''). The Guernsey County Sheriff's testimony was the direct exploitation of the two aforementioned unconstitutional acts. *Wong Sun* v. *United States* (1963), 371 U. S. 471.

Moreover, counsel had no reason to believe that the trial judge, once having ruled the events in Guernsey County noncoercive, and once having decided the *Miranda* question adversely to defendant, would thereafter, *on the same facts*, reverse himself and hold the statements inadmissible. Contrary to the majority opinion, this is the same situation as that in *Sims* v. *Georgia* (1967), 385 U. S. 538 (erroneous ruling on a pre-trial motion to suppress was reversed even though there was no objection made to the confession at trial). Compare *White* v. *Maryland* (1963), 373 U. S. 59, 60 (conviction reversed, even though no objection was made at trial to defendant's uncounseled guilty plea).

The result reached by the majority is inconsistent with our earlier guideline in *State* v. *Kassow, supra* (28 Ohio St.. 2d 141).

In *Kassow,* in a footnote on page 145, the court said that "when any such pre-trial motion to suppress [as involuntary] is filed, the court should require the prosecution * * * to undertake the proof of the *Miranda* waiver, so that, at a later time, the trial will not be interrupted for such purpose with its attendant inconvenience." While acknowledging that voluntariness and *Miranda* are two separate issues, the court fashioned that rule because the facts and circumstances involved are generally related as to time and place. Likewise, it is usually the same evidence which is sought to be suppressed.

In the instant case, the trial judge did not require proof of compliance with *Miranda*. However, the prosecutor *did undertake* to prove such compliance. As shown above, the *Miranda* question was raised, litigated and argued. Yet the majority finds that the issue was not properly raised or litigated, solely because the motion was not

specifically directed to such question. Such an interpretation will, I submit, hereafter nullify that rule—for even if the issue is raised and litigated it will not be considered as decided solely because the literal language of the motion did not specify it. Where does such a rule leave the prosecution? The question seems especially pertinent in this case because the prosecuting attorney, at the hearing, introduced in evidence the waiver card signed by defendant in Guernsey County, elicited testimony concerning that waiver, and at trial he made no attempt to prove compliance with *Miranda*.

Thus, because I read the record as showing attempted compliance with *Miranda* and as clearly showing an involuntary oral confession, I find that the motion to suppress was erroneously ruled upon as a matter of law. Because that motion operated as a continuing objection to all the matters raised therein, I dissent from that part of the majority opinion.

While I agree that a *Miranda* violation can be harmless error, I find that the violation is not harmless in this case. To be harmless, the court must be able to state that the error was harmless *beyond a reasonable doubt*. There must be overwhelming *untainted* evidence, *apart from* the erroneously received evidence, to sustain the conviction. Stated another way, the error may be harmless if the evidence is cumulative or does not establish an element of the crime, or is not the basis for other evidence which establishes an element of the crime. In the following cases (*Miranda* or *Escobedo* violations) the guilt of the defendant was proved beyond a reasonable doubt *apart from* the receipt in evidence of the improperly obtained evidence. *United States* v. *Diaz* (C. A. 1, 1970), 427 F. 2d 636; *Whitsell* v. *Perini* (C. A. 6, 1969), 419 F. 2d 95; *United States* v. *Sutt* (C. A. 7, 1969), 415 F. 2d 1305; *United States* v. *Crisp* (C. A. 7, 1971), 435 F. 2d 354; *United States* v. *Teague* (C. A. 7, 1971), 445 F. 2d 114; *United States, ex rel. Jiggetts,* v. *Follette* (C. A. 2, 1971), 446 F. 2d 114.

Contrariwise, the following cases found that there was

not sufficient untainted evidence to sustain the conviction: *Cardwell* v. *Commonwealth* (1968), 209 Va. 412, 164 S. E. 2d 699; *United States* v. *Jenkins* (C. A. 7, 1971), 440 F. 2d 574; *People* v. *Powell* (1967), 59 Cal. Rptr. 817, 429 P. 2d 137; *People* v. *Doherty* (1967), 59 Cal. Rptr. 857, 429 P. 2d 177; *People* v. *Jackson* (1967), 60 Cal. Rptr. 248, 429 P. 2d 600; *In re Morse* (1969), 76 Cal. Rptr. 385, 452 P. 2d 601.

As I view the facts, the cases relied upon by the majority have no applicability to the instant case. In each of the three cases there is sufficient untainted evidence to support a conviction beyond a reasonable doubt. In *United States, ex rel. Moore,* v. *Follette* (C. A. 2, 1970), 425 F. 2d 925, the court, without deciding whether an earlier oral confession was involuntary, found that a subsequent written confession was voluntary, that it was corroborated in substance by the testimony of a participant, and that the stolen property was found in defendant's possession at the time of his arrest. The oral confession added nothing that was not already in evidence; it was truly cumulative.

In *Commonwealth* v. *Padgett* (1968), 428 Pa. 229, 237 A. 2d 209, the defendant's statement, taken in violation of *Escobedo,* was used to impeach defendant's trial testimony. The differences were so inconsequential that it is even doubtful that Padgett's credibility was affected. At trial, Padgett said that: the victim was standing; he did not remember how long he had known the victim; he did not serve the victim a drink; and that the victim came at him. In his statement, he said that: the victim was seated; he had known the victim for one year; there was no mention of a drink; and that the victim came at him.

The Pennsylvania Supreme Court found the statement generally consistent with defendant's trial testimony and found further that it played an "insignificant" part in the trial. The conflicting statements added nothing to the trial; the crime was entirely proved apart from them; and thus the error was found harmless. By contrast, in the instant case the majority opinion does not claim that either denial of counsel was insignificant.

*Commonwealth* v. *Witherspoon* (1971), 442 Pa. 597, 277 A. 2d 827, found an *Escobedo* error harmless. However, the defendant was identified by two witnesses and their testimony was corroborated by other witnesses. The court found the crime was overwhelmingly proved beyond a reasonable doubt *apart from* the inadmissible statement.

By contrast, in the instant case there can be no finding of harmless error on the facts presented. Both the denial of assistance of counsel and the coercion practiced in Guernsey County directly produced defendant's oral confession and taped statement. Both were instrumental in his conviction for first degree murder, and without which first degree murder could not be proven. The only evidence that defendant stabbed the victim was his oral confession and taped statement. Thus, it is apparent that without the inadmissible evidence there is no overwhelming evidence to support the conviction. (No weapon was produced at trial.)

If *Miranda* means anything, it means that when the "accused" requests counsel he is entitled to it, and the interrogation *must* cease until counsel is provided. Ours is an "accusatorial" not an inquisitorial system and the *Miranda* decision was designed to permanently implement that principle into American jurisprudence. To "chip away" at the rights announced therein is to erode that principle.

Apart from the *Miranda* question, however, the receipt in evidence of the coerced oral confession requires automatic reversal. See, *e. g., Chapman* v. *California* (1967), 386 U. S. 18; *Payne* v. *Arkansas* (1958), 356 U. S. 560; *Lynumn* v. *Illinois, supra* (372 U. S. 528); *Haynes* v. *Washington, supra* (373 U. S. 503); *Malinski* v. *New York* (1945), 324 U. S. 401; *Spano* v. *New York, supra* (360 U. S. 315); *Jackson* v. *Denno, supra* (378 U. S. 368). See, also, *Commonwealth* v. *Padgett, supra* (428 Pa. 229), and *Commonwealth* v. *Witherspoon, supra* (442 Pa. 597) (two of the cases relied on by the majority).

Thus, there is not sufficient untainted evidence in the

instant case to support a conviction for first degree murder. See *Thompson* v. *Louisville* (1960), 362 U. S. 199.

For the foregoing reasons, I respectfully dissent.

STERN, J., dissenting. I dissent from the opinion of the majority for the reason that, in my opinion, the errors complained of by the appellant were prejudicial to him. The pre-trial motion to suppress evidence should have been sustained. Although the motion pertained primarily to the tape-recorded statement taken in Noble County, that statement was so closely related to the questionable conduct of the Guernsey County officials as to require an examination of their conduct as well.

If the motion had been sustained, neither the tape-recorded statement, nor the testimony by the Guernsey County sheriff, would have been admissible at trial. Because of the basic constitutional rights involved, I do not concur that the defense counsel's failure, at trial, to object to the testimony of the Guernsey County sheriff constituted a waiver.

An examination of the record of the preliminary hearing on the motion to suppress indicates that the appellant's oral statement given to the Guernsey County officials, was not voluntarily made. Appellant testified at the preliminary hearing that he was told that his girl friend (fiancee) would be sent "to reform school" and that his brother would be held as "an accomplice before and after the fact" if he did not tell them he had committed the crime. He stated further that he was advised by the Guernsey County officials that they had about eight more counts against him. At trial, a Guernsey County law enforcement official testified that the appellant had been induced to admit that he had given some money, taken from the victim, to his girl friend. Subsequent to all of this, the appellant gave his oral statement to the Guernsey County officials, and agreed to lead them to the body of the victim, both of which acts directly implicated his participation in the crime in a manner which violated his constitutional rights.

In paragraph two of the syllabus of *Spears* v. *State* (1853), 2 Ohio St. 583, this court stated: "A confession induced by hope or fear, excited in the mind of the prisoner by the representations or threats of any one, is not to be considered as voluntary." In this case, the testimony regarding the appellant's oral statements, and his act in taking the officials to the body of the victim, under the circumstances, should not have been admitted in evidence.

Further, the effects of this coercion and inducement did not vanish when appellant was turned over to the Noble County authorities. The appellant himself stated that he "gathered that Noble County was going with Guernsey County." That conclusion is supported by the fact that there was "no break in the stream of events," beginning with the original custody by Guernsey County officials and continuing to the taking of the tape-recorded statement in Noble County. See *Darwin* v. *Connecticut* (1968), 391 U. S. 346, 349.

As stated in *United States* v. *Bayer* (1947), 331 U. S. 532, 540:

"Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. * * *"

To find that appellant's tape-recorded statement was freely and voluntarily given would be to find that none of the police irregularities heretofore mentioned extended beyond the Guernsey County interrogation. Absent a showing that the Noble County statement was not directly related to the earlier confession, it is my opinion that appellant's Noble County statement was not obtained "by means sufficiently distinguishable from the underlying illegality to be purged of the primary taint." *State* v. *Bryson* (1970), 22 Ohio St. 2d 224, 230, citing *Wong Sun* v. *United States* (1963), 371 U. S. 471, 487-488.

Accordingly, the trial court's overruling of the motion to suppress the tape-recorded statement was, in my opinion, prejudicial, and neither the tape-recorded statement nor the prior oral statement should have been admitted in evidence at trial.

I agree with the majority's conclusion, though for different reasons, that the tape-recorded statement itself was taken in violation of appellant's *Miranda* rights, but I do not agree that such violation constituted harmless error.

Appellant's tape-recorded statement, portions of which are found in footnote 3 of the majority opinion, includes appellant's statement: "I want to see a lawyer *sometime*." (Emphasis added.) Therefore, I cannot agree with the majority's statement that the appellant "did not indicate on the tape *in any manner* that he wished to consult counsel before speaking." (Emphasis added.) To hold that appellant's inclusion of the word "sometime" implies that he did not indicate *in any manner* that he wished to see an attorney prior to making a statement, would ignore that point of time at which the appellant's need for an attorney was most critical. The fact that the appellant subsequently agreed to make a statement in no way corrects the error, for once he indicated that he wanted an attorney, *the interrogation should have stopped*, and no further questions should have been asked until legal counsel had been provided. As stated in *Miranda* v. *Arizona* (1966), 384 U. S. 436, 444:

"* * * If, however, he indicates *in any manner* and at any stage of the process that he wishes to consult with an attorney before speaking, there can be *no* questioning." (Emphasis added.)

In *State* v. *Cowans* (1967), 10 Ohio St. 2d 96, this court held that "Where the trial court has admitted into evidence testimony relating to a confession obtained in violation of the federal Constitution * * * such error is prejudicial if 'there is a reasonable possibility that the evidence complained of might have contributed to the convic-

130

tion.' (*Fahy* v. *Connecticut*, 375 U. S. 85, and *Chapman* v. *California*, 87 S. Ct. 824, followed.)''

In view of the manner in which certain admissions were elicited from the appellant at a stage in the investigative proceedings where his constitutional rights were violated, and the fact that inquiries by the prosecutor were continued after appellant had requested the assistance of counsel, appellant's constitutional rights were violated.

In my opinion, the judgment should be reversed and the cause remanded for a new trial.