Defendant Kevin Smyth pleaded no contest to a charge of driving while under the influence after the Parma Municipal Court denied his motion to suppress evidence of his breathalyzer test. The issues in this appeal are whether the police had probable cause to stop defendant without a warrant and whether the police questioned defendant before advising him of his constitutional rights.
When reviewing a court's ruling on a motion to suppress, we accept the court's factual findings if they are supported by competent, credible evidence. State v. Weaver(1993), 86 Ohio App.3d 427. The facts are undisputed. The testimony heard at the suppression hearing showed the arresting officer had been patrolling at 3:00 am. near a gas station directly across the street from the police station. The officer saw a car parked at the gas station that had three flat tires and minor damage. Defendant stood near the car, speaking on a public telephone. The officer pulled alongside defendant and, without exiting his cruiser, asked if defendant had been involved in a crash. Defendant replied that he hit something, but"wasn't sure" what he hit. At the time, the officer noted defendant appeared to be swaying while speaking on the telephone and his words were slurred. The officer exited his vehicle and inspected defendant's car in order to ascertain the extent of the damage. The officer turned to defendant and noticed defendant slurred his words while speaking on the telephone. The officer also detected an odor of alcohol on defendant's breath.
Because the officer was not certified to conduct. the horizontal gaze nystagmus test, he decided to forego conducting field sobriety tests until the crash investigator arrived at the scene. The crash investigator immediately noticed defendant's intoxication and spoke to defendant to ask him initial questions about how much he had drunk and how the car sustained its damage. When defendant replied that he struck a curb, the crash investigator doubted the truth of the statement. The crash investigator conducted several sobriety tests. Defendant performed poorly on all the tests. The two officers placed defendant under arrest and held him in the back of a police cruiser. Because defendant had a cut lip, the officers called for an ambulance to check for possible injuries he might have sustained when he damaged his car.
The medical personnel found defendant had no serious injuries, so the officers took defendant across the street to the jail, read him his rights, read him warnings relating to the automatic license suspension law, and proceeded to conduct a breathalyzer test. In response to police questions, defendant admitted he had been drinking and driving that evening, and that his car struck the curb near the gas station. The breathalyzer indicated defendant had a blood alcohol level of.217.
As applicable to the issues raised in this appeal, defendant premised his motion to suppress the results of the breathalyzer on grounds that the police lacked probable cause to approach him while he spoke on the public telephone and that they questioned him at the scene before reading him his rights. In a written judgment entry, the court found the officers not only had probable cause to believe an accident occurred, but had an affirmative duty to investigate because of the obvious damage to defendant's car. When the officer spoke to defendant, he saw clear indications of intoxication that the court found gave rise to an articulable and reasonable suspicion that defendant had been driving while under the influence.
As to the officer's failure to read defendant his rights before speaking to him at the gas station, the court stated:
 "[t]he Court believes it would have been advisable to Mirandize Defendant at the scene prior to putting him in the police car. however [sic], based upon the evidence deduced [sic] at the Hearing, the Court finds that any statements the Defendant made prior to being given his Constitutional Rights were either made during the investigatory stage of the proceedings or subsequent to being Mirandized at the station. Therefore, the Court finds that any prejudice was harmless."
The first assignment of error complains that the court abused its discretion by finding the police officer had probable cause to stop defendant. Defendant maintains the facts observed by the police officer — defendant speaking on a public telephone late at night beside a car with three flat tires — do not rise to the level of specific and articulable facts that a crime had occurred.
The court did not err by refusing to grant the motion to suppress because the officer's initial encounter with defendant did not amount to a seizure of the kind for which the officer would need to demonstrate specific and articulable facts that a crime had occurred. In Strongsville v. Russell(Nov. 30, 1995), Cuyahoga App. No. 68316, unreported, we addressed a very similar issue. In Russell, a police officer saw Russell, sitting in his parked car at 1:42 a.m. in a shopping center parking lot. Russell's car had its parking lights on, its engine off, but the keys were in the ignition and the car's electrical system had been activated. Because of the late hour, the police officer thought that Russell might need some assistance. When he offered assistance, the officer found Russell to be intoxicated. We rejected Russell's claim that he had been "seized" because the officer lacked an articulable reason to approach his vehicle and inquire whether he needed assistance. We stated:
 Not every warrantless contact between a police officer and a citizen is subject to the Fourth Amendment. In Terry v. Ohio(1968). 392 U.S. 1, 19. at fn. 16, the court stated, "[o]bviously, not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." In United States v. Mendenhall(1980), 446 U.S. 544, 554
(plurality opinion), the court noted, "[t] he purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but `to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" Id.
at 191, citing 446 U.S. 544, 554-555 (internal citation omitted); see, also, State v. Smith(1989), 45 Ohio St.3d 255, 257-260, reversed on other grounds, sub nom. Smith v. Ohio(1990), 494 U.S. 541; State v. Johnson(1986), 34 Ohio App.3d 94, 96.
 Hence, the distinction between an intrusion amounting to a seizure of the person and an encounter that intrudes upon no constitutionally protected interest centers on the nature of contact. "A person has been seized within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave Mendenhall, supra, at 554; see, also, Florida v. Royer(1983), 460 U.S. 491, 497; I.N.S. v. Delgado(1984), 466 U.S. 210 Strongsville v. Russell supra, unreported at 1-2.
The evidence showed that no seizure took place when the officer first encountered defendant. The officer merely pulled his cruiser alongside the public telephone and asked if defendant had been in an accident. the was not until after the officer exited his cruiser and inspected defendant's vehicle that he suspected defendant's intoxication. The reasons for the officer's encounter with defendant had nothing to do with a suspicion that defendant committed a criminal offense of any kind. The first assignment of error is overruled.
 II
The second assignment of error complains that the arresting officers questioned defendant and conducted field sobriety tests without first advising defendant of his rights pursuant toMiranda v. Arizona(1966), 384 U.S. 436. Defendant claims his interrogation yielded an admission to the police that he had been driving when he had his accident.
The courts have consistently rejected the idea that police must first read a suspect Miranda rights before conducting field sobriety tests since roadside questioning of a motorist pursuant a routine traffic stop does not ordinarily constitute custodial interrogation requiring Miranda warnings. See Berkemer v. McCarty(1984),468 U.S. 420; State v. Feasel(1988), 41 Ohio App.3d 155,157; Cleveland v. Criss(Dec. 10, 1998), Cuyahoga App. No. 72862, unreported; State v. Pelz(Nov. 5, 1998), Cuyahoga App. No. 73654, unreported. The questioning in this case arose in the context of the crash investigator's investigation. "A motorist questioned at an accident scene can reasonably expect that he will be requested to answer some questions and have his license and registration checked." See State v. Warrell(1987), 41 Ohio App.3d 286,287.
Although the crash investigator admitted he had some immediate suspicion of defendant's intoxication, the investigator's background questions to defendant cannot be considered a custodial interrogation. A determination whether a particular individual was "in custody" during police questioning does not depend upon the subjective analysis of either the questioner or the person being questioned. Berkemer, 468 U.S. at 442. Instead, we look to see"whether, under the totality of the circumstances, a reasonable person would have believed that he was not free to leave." State v. Gumm(1995), 73 Ohio St.3d 413, 429. The undisputed facts give no indication that defendant had been held in custody pending medical assistance or investigation of a possible crash. At any point, defendant could have left the scene.
In any event, as the court noted, the officers' failure to read defendant his rights could not have been prejudicial since there was no testimony to show that defendant said anything incriminating between the time he had been placed under arrest and the time the officers did inform him of his rights. The harmless error doctrine is applicable to Miranda violations.Arizona v. Fulminante(1991), 499 U.S. 279, 310; State v. Edgell
(1972), 30 (1972), 30 Ohio St.2d 103. The allegedly incriminating statements were made before any field sobriety tests had been conducted, at a point in time in which the officers were not holding defendant in custody; hence, they could not holding defendant in custody; hence, they could not form the basis for any error in this case. The second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Parma Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E McMONAGLE. P.J., JAMES D. SWEENEY, J., CONCUR
 ___________________________________ JUDGE JOHN T. PATTON
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).