THE STATE OF OHIO, APPELLEE, *v.* BRYSON, APPELLANT.

[Cite as State v. Bryson (1970), 22 Ohio St. 2d 224.]

(No. 69-655—Decided June 10, 1970.)

226

*Mr. Lee C. Falke,* prosecuting attorney, *Mr. Andrew J. Niekamp* and *Mr. Herbert M. Jacobson,* for appellee.

*Mr. Clarence J. Stewart* and *Mr. Patrick A. Flanagan,* for appellant.

SCHNEIDER, J. The defendant challenges the admissibility of his conversation with officers Guffy and Parker

on October 28th because immediately prior thereto, he had not been advised of his constitutional rights. The record shows that officer Guffy was called to the jail by the defendant; that the conversation was initiated and controlled by the defendant; that officers Guffy and Parker were primarily listeners; that there was no atmosphere of compulsion during this time; and that the admission made by the defendant was volunteered as a matter of his own free will.

*Miranda* v. *Arizona* (1966), 384 U. S. 436, compels the protection of a suspect faced with the coercion inherent in police interrogation against pressures which break down the suspect's will to resist and threaten his Fifth Amendment privilege against self-incrimination. See *Id.* at 445-56. Such pressures were absent in this case. The atmosphere surrounding Guffy and the defendant was neither coercive nor intimidating. Guffy did not force his will upon Bryson. He did not ask coercive questions calculated to compel Bryson to answer. At most, Guffy merely sought clarification or explanation of the information willingly supplied by the defendant. In no sense can the conversation of Guffy and Bryson be characterized as an "in-custody interrogation." See *State* v. *Perry* (1968), 14 Ohio St. 2d 256, 262. In *Miranda*, 386 U. S., at page 478, the United States Supreme Court stated:

"* * * Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not bound by the Fifth Amendment and their admissibility is not affected by our holding today."

We hold that the October 28th admission of James Garrett Bryson, made voluntarily in the course of a conversation initiated at the request of and controlled by him, under totally noncoercive circumstances and not during interrogation, was admissible even though he was not advised of his constitutional rights.

The defendant contends that his October 28th admission is impermissible evidence because it was made in the absence of counsel and therefore constitutes a violation of his Sixth Amendment rights. *Massiah* v. *United States* (1964), 377 U. S. 201, holds that a statement taken in the absence of counsel, from an accused who has been indicted, is inadmissible. In *Massiah,* the defendant had been indicted, which the Supreme Court emphasized as the critical fact. Although we fail to understand that feature in view of *Escobedo* v. *Illinois* (1964), 378 U. S. 478, 484-88, the defendant here had not been indicted when his October 28th admission was made.

The distinctive feature of *Massiah* is that the admission was made to a confederate of the defendant who had, without the defendant's knowledge, turned state's evidence. In the instant case, the defendant willingly gave his statement to those whom he knew were police. See *State* v. *Hymore* (1967), 9 Ohio St. 2d 122. Thus, the circumstances under which he made his admission are clearly different from those in *Massiah*, which, therefore, does not control this case.

The defendant next contends that the October 28th admission is impermissible evidence because it is a "fruit" of the September 7th confession, which concededly was inadmissible. Although a "fruit of the illegally obtained confession" doctrine exists, *e. g., Harrison* v. *United States* (1968), 392 U. S. 219; *McDaniel* v. *North Carolina* (1968), 392 U. S. 665; *People* v. *Ditson* (1962), 57 Cal. 2d 415, 369 P. 2d 714, the record here fails to establish that Bryson's October 28th admission is a "fruit" of his September 7th confession.

Motivation determines whether testimonial evidence

constitutes a "fruit" of illegal police activity. See *Harrison* v. *United States, supra*. Although the defendant's October 28th admission impliedly referred to his September 7th confession, this reference does not establish that the September 7th confession induced the later admission. Nor does it indicate that the September 7th confession motivated the defendant to speak on October 28th.[1]

The defendant had the opportunity to reflect independently upon his situation. Nearly two months elapsed between his two statements. He was represented by counsel during that time. Nothing in the record indicates that he was subject to police pressure relating to the September 7th confession. Furthermore, the context of the defendant's conversation with officer Guffy suggests that he was impelled to speak by his feelings towards his acquaintances, that is, he may have decided to implicate some of them but not others. The clear inference that the October 28th admission was a product of the defendant's intervening free will is not to be ignored. Volition is also a relevant factor in determining whether testimonial evidence is a "fruit"

---

[1] *United States* v. *Bayer*, 331 U. S. 532, 540-541:

"Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed. The *Silverthorne* and *Nardone* cases, relied on by the Court of Appeals, did not deal with confessions but with evidence of a quite different category and do not control this question. The second confession in this case was made six months after the first. The only restraint under which Radovich labored was that he could not leave the base limits without permission. Certainly such a limitation on the freedom of one in the Army and subject to military discipline is not enough to make a confession voluntarily given after fair warning invalid as evidence against him. We hold the admission of the confession was not error. . . ." It should be noted that *Bayer* relies on the defendant's volition as the determinative factor.

of illegal police activity. *United States* v. *Bayer* (1947), 331 U. S. 532, 540-41; *Brown* v. *United States* (C.A. D.C. 1966), 375 F. 2d 310; *Smith* v. *United States* (C.A. D.C. 1963), 324 F. 2d 879, certiorari denied, 377 U. S. 954. See *Smith* v. *United States* (C.A. D.C. 1965), 344 F. 2d 545; *United States* v. *Tane* (C.A. 2 1964); 329 F. 2d 848; *Wong Sun* v. *United States* (1963), 371 U. S. 471.

In short, the record does not establish that the October 28th admission of Bryson was produced by the "exploitation of that illegality." Rather, it was produced "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun* v. *United States* (1963), 371 U. S. 471, 487-88.[2]

The defendant's last objection to the admission of the October 28th statement is that it was so closely related to the September 7th confession that any effective cross-examination of officer Guffy concerning it would induce the admission into evidence of the latter confession on redirect examination. The defendant asserts that he was, therefore, unable to conduct a meaningful cross-examination of officer Guffy and for that reason the testimony should have been excluded. With this we do not agree.

Bryson took the stand and testified in his own behalf.

---

[2] In *Harrison* v. *United States*, 392 U. S. 219, there is a suggestion that all the defendant needs to show is that "but for" the first confession the second one would not have been made, and he has carried his burden to establish that the second statement is a "fruit." See *Id.*, and the dissent of Mr. Justice White therein. Although limiting its holding to the particular facts before it, *Harrison* does place the burden on the government to show that the defendant's statements were not induced by its illegal action, once the defendant shows that "but for" the illegally obtained confessions he would not have made his later statements.

Even if we were to apply that standard here, and further, conclude that Bryson's October 28th statements would not have occurred "but for" the September 7th illegally obtained confession, we would still hold the evidence admissible in this case. The record justifies the conclusion that Bryson's illegally obtained confession did not induce his October 28th statement. Any burden placed on the government by *Harrison, supra*, has been met.

His September 7th confession could have been offered by the prosecution to impeach his credibility. *State* v. *Butler* (1969), 19 Ohio St. 2d 55. Although the introduction of that confession would have been limited to the issue of credibility, the fact remains that the jury could properly have heard the defendant's September 7th confession. This diminishes the magnitude of the defendant's claim that he could not cross-examine officer Guffy without the risk that the jury would learn of the September 7th confession during Guffy's re-direct examination.

The defendant's fear of cross-examining officer Guffy may have been actuated by a strategy to prevent the September 7th confession from being revealed during the state's case in chief, thereby increasing his prospects of having a motion for acquittal granted at the end of the state's case. This restraint on cross-examination is illusory. There is no reason why the defendant could not have successfully reserved a portion of his cross-examination until after the state's case had been presented. See *Webb* v. *State* (1876), 29 Ohio St. 351. Thus, he could have avoided the risk of endangering his motion to dismiss and retained the opportunity to cross-examine.

The record indicates that there was a vigorous cross-examination of officer Guffy, covering more than 150 transcript pages. Although that cross-examination dealt with Guffy's testimony on matters other than the October 28th admission, the defendant had ample opportunity to attempt to find inconsistencies and contradictions in the testimony in chief which would reflect on Guffy's credibility. The defendant also had the opportunity to use all methods of impeachment, *e. g.*, interest, bias and prior inconsistent statements. Nothing of this aspect of cross-examination was in any way impaired by the reference to the September 7th confession which was implied in the October 28th admission.

Furthermore, defendant could have strenuously cross-examined Guffy on all the facts and circumstances surrounding the conversation of October 28th without ever

touching upon its contents. Thus, it appears that defendant's fear that the September 7th confession would be brought into the case on re-direct examination would materialize only in the event that defendant plumbed the content of the October 28th admission during his cross-examination of officer Guffy. In light of the available cross-examination alternatives which were available to defendant, and which he exercised, any limitation which existed in regard to cross-examining Guffy concerning the contents of the October 28th admission is not of constitutional dimensions.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., LEACH, HERBERT and DUNCAN, JJ., concur.[3]

CORRIGAN, J., dissents.

LEACH, J., of the Tenth Appellate District, sitting for MATTHIAS, J.

---

[3]CHIEF JUSTICE TAFT participated in this case which was, however, decided after his death.