THE STATE OF OHIO, APPELLEE, *v.* WILSON, APPELLANT.

[Cite as State v. Wilson (1972), 30 Ohio St. 2d 199.]

(No. 71-786—Decided May 31, 1972.)

200

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, and *Mr. John D. Valentine,* for appellee.

*Mr. Donald L. Weber* and *Mr. Robert H. Davis,* for appellant.

SCHNEIDER, J. Appellant first contends that he was denied due process of law when the trial court overruled his motion to have the blood stains found on his clothing and the bullets taken from him and the decedent examined by an expert selected by him.

Prior to trial appellant filed a nine-part discovery motion pursuant to which the trial court allowed him to inspect his clothing, the bullet taken from his hand, the bullets and weapons taken from and around the pony keg, and the results of all ballistic, fingerprint and paraffin tests made on behalf of the state.

Appellant did not request the right to subject to scien-

tific analysis blood stains found on his clothing. Therefore, appellant's claimed error in this respect is without merit.

The trial court permitted appellant to inspect the results of the state's ballistic tests. The photomicrographs of the bullet removed from appellant's hand and the bullet removed from the decedent were made available to him. Sufficient information was given to appellant which could have been transmitted to an expert of his own choosing. He presented no such ballistics expert, nor did he request that one be provided him.

Considering counsel's comprehensive cross-examination of the state's expert witnesses and his failure to show how appellant was prejudiced in light of the evidence which was made available to him, we can find no clear abuse of that sound discretion which rests in the trial court in determining a defense motion for discovery. *State* v. *Laskey* (1970), 21 Ohio St. 2d 187, and *State* v. *Kassow* (1971), 28 Ohio St. 2d 141.

As to the composition of the jury, appellant contends that: (A) one venireman was improperly excused for cause contrary to *Witherspoon* v. *Illinois* (1968), 391 U. S. 510; (B) two veniremen should have been excluded under R. C. 2945.25 after they testified that because of the indictment against the accused he was "probably guilty"; and (C) that a trial by a jury consisting entirely of persons of the Caucasian race is not a trial by a peer group from appellant's own religious, racial, environmental and social background, and therefore, violative of the Fourteenth Amendment of the United States Constitution.

(A) In *State* v. *Watson* (1971), 28 Ohio St. 2d 15, approved and followed in *State* v. *Patterson* (1971), 28 Ohio St. 2d 181, we held:

"In selecting the members of a jury, unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it cannot be assumed that this is his position."

On examination by both the state and the defense,

venireman Carlton unambiguously stated that she could not vote for the death penalty. Even on further examination by the defense she reiterated that position:

"Q. After that consideration, I think you indicated to me that there would be a circumstance in which you would vote for the death penalty?

"A. No, sir, I don't think so.

"Q. That could not happen even after you listened to the particular case?

"A. No, sir."

Thereupon, appellant's counsel asked her the following question: "Is there anything about the nature of this case that would keep you from listening on the question of the death penalty?" Her answer was: "I could listen."

That logical reply was in response to a question not designed to elicit an "unambiguous response," called for by *Witherspoon,* but falling outside the "sufficient latitude" granted counsel during the *voir dire* examination of prospective jurors in a capital case. *State* v. *Anderson* (1972), 30 Ohio St. 2d 66.

Although the venireman indicated that she might be able to *listen* on the death penalty question, her prior unambiguous responses showed that she was irrevocably committed before the trial began to vote against the death penalty regardless of the facts and circumstances that might emerge in the course of the proceedings.

Thus, there was no error in the trial court's sustaining of the state's challenge for cause.

(B) The record shows that although two prospective jurors indicated doubt as to the innocence of appellant in view of the indictment returned against him, each demonstrated that they could act fairly and impartially. See *State* v. *Elliott* (1971), 25 Ohio St. 2d 249.

(C) *Swain* v. *Alabama* (1965), 380 U. S. 202, holds that a proportionate number of an accused's race is not constitutionally required so long as the jury selection standards apply to all persons. Therefore, we can find no error in the composition of the jury.

Appellant contends that the introduction in evidence of his hospital records violated his right of confrontation under Section 10, Article I of the Ohio Constitution. In support of this proposition, appellant's only reference to the record is that "there are numerous statements and remarks made by persons not subject to cross-examination regarding the condition of the defendant and the removal of the bullet, money and clothing of the defendant and various other matter[s] which was [sic] prejudicial to the defendant's case."

In view of his failure to specify the nature of the statements or remarks referred to or the manner in which he claims they prejudiced his conviction, we are unable to agree that his constitutional rights were infringed. Cf. *State* v. *Tims* (1967), 9 Ohio St. 2d 136.

Appellant claims that the trial court erred in allowing in evidence an extrajudicial oral statement of appellant given to a nurse in charge of the emergency room at the hospital. He contends that the statement was given while under sedation, in police custody and without being advised of his constitutional rights.

The fact is that when the nurse came in contact with him, appellant inquired of her, "Is he dead?" to which she replied, "Is who dead?" Appellant replied, "The man who was kneeling."

Custodial interrogation as defined in *Miranda* v. *Arizona* (1966), 384 U. S. 436, means questioning initiated by law enforcement officers after a person has been taken into custody, and the *Miranda* requirements do not apply to admissions made to persons who are not officers of the law or their agents. (*State* v. *Watson* [1971], 28 Ohio St. 2d 15.) Nor do they apply to volunteered statements. (*State* v. *Bryson* [1970], 22 Ohio St. 2d 224; *State* v. *Perry* [1968], 14 Ohio St. 2d 256; and *State* v. *Hymore* [1967], 9 Ohio St. 2d 122.)

Appellant has claimed a number of other errors. However, a careful examination of the record reveals them to be without merit for the following reasons:

1. The admission in evidence of photographs of an

autopsy is committed to the sound discretion of the trial judge (*State* v. *Hill* [1967], 12 Ohio St. 2d 88) and the record fails to show an abuse of that discretion.

2. The restraint of an accused by leg-irons while seated in a sheriff's patrol car during the viewing of the scene of the crime by the jury cannot be the predicate for reversal of a conviction where an objection is not made until the trial has been resumed in the courtroom and the record fails to demonstrate that the jury was ever aware that the accused was so restrained.

3. Where the accused, as here, voluntarily submits himself to a public hospital's emergency facilities for care, the bullet and blood removed from his person as well as his clothing and other effects are not subject to the protection of the Fourteenth Amendment of the United States Constitution. See *Schmerber* v. *California* (1966), 384 U. S. 757.

4. The control of redirect examination is committed to the discretion of the trial judge and a reversal upon that ground can be predicated upon nothing less than a clear abuse thereof.

5. Statements of counsel, even though highly irregular and prejudicial if heard by a jury, cannot be the subject of a reversal of a conviction unless the record reasonably shows that the statements were in fact heard by the jury.

6. A reversal of a conviction cannot be predicated upon improper inferences from the evidence made by a prosecutor in argument, where an objection is sustained and the jury is adequately warned to disregard the inferences.

7. The Supreme Court will not weigh evidence.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*


O'NEILL, C. J., HERBERT, CORRIGAN, STERN, LEACH and BROWN, JJ., concur.