DECISION AND JUDGMENT ENTRY
This matter is before the court on appeal from the Lucas County Court of Common Pleas wherein appellant, Keith Perkins, was convicted on two counts of possessing cocaine. The facts giving rise to this appeal are as follows.
On March 21, 1998, Detective Peter Swartz of the Toledo Police Department swore out an affidavit of probable cause for the issuance of a search warrant. In his affidavit, Swartz stated that on March 21, 1998, he had received information from a confidential informant that drugs were being sold at 2222 Collingwood Boulevard, apartment No. 2. According to the confidential informant, appellant was often present and participating in the drug sales. Swartz stated that this particular confidential informant had provided information in the past that has led to arrests and narcotics seizures. Swartz stated that police had conducted surveillance at the Collingwood address and observed numerous people going into the apartment for a few minutes and then leaving. Swartz, a five year member of the Toledo Police Department, stated that this behavior was indicative of drug trafficking.
Swartz further stated that on March 21, 1998, the Toledo Police Department gave the confidential informant money to purchase crack cocaine from 2222 Collingwood Boulevard, apartment No. 2. Swartz stated that the confidential informant was observed going up to the door of 2222 Collingwood, apartment No. 2. The confidential informant immediately returned to Swartz and handed over a piece of crack that he had purchased at said location.
Swartz went on to request a "waiver of the precondition of nonconsensual entry" pursuant to R.C. 2933.231 based on the fact that appellant was known to frequent the apartment and was known to carry a handgun.
A search warrant was issued. On March 22, 1998, Swartz arrived at 2222 Collingwood and observed a dark blue van parked next to the apartment building. The confidential informant had alerted the officers that appellant drove a dark, blue van. The warrant was then executed when a directed patrol team forcibly broke down the front door of apartment No. 2. Toledo police officer Brian Lewandowski testified in a subsequent suppression hearing that he was involved in the execution of the warrant. When he entered the apartment, he saw appellant being restrained on the floor by the directed patrol unit. Appellant was restrained because of an outstanding felony arrest warrant that had been issued against him. A female was also present in the apartment. Officer Lewandowski began his search for crack cocaine. Lewandowski testified that he found a jacket on the living room couch. Lewandowski testified that he assumed the jacket was for a male because of its size. Appellant denied ownership. Inside one of the pockets, Lewandowski found a pouch containing crack cocaine. At that point, Lewandowski testified that he heard Toledo Police Sergeant Wauford read appellant his Miranda rights. Officer Lewandowski testified that he then asked appellant if there was anymore cocaine in the house and appellant responded "[N]o, that should be it."
Appellant was indicted on two counts of possessing cocaine in violation of R.C. 2923.11. On August 26, 1998, a jury found appellant guilty of both charges. He was sentenced to seven years in prison. Appellant now appeals setting forth the following assignments of error:
 "I. THE TRIAL COURT SHOULD HAVE GRANTED THE MOTION TO SUPPRESS THE RESULTS OF THE SEARCH OF 2222 COLLINGWOOD AS THE WARRANT WAS ISSUED BASED ON AN AFFIDAVIT WHICH MATERIALLY MISREPRESENTED THE FACTS.
 "II. THE TRIAL COURT SHOULD HAVE GRANTED THE MOTION TO SUPPRESS THE STATEMENT MADE BY MR. PERKINS AS (1) THE STATEMENT WAS A FRUIT OF THE WRONGFULLY ISSUED SEARCH WARRANT AND
 (2) THE STATE DID NOT SHOW THAT MR. PERKINS EVER VOLUNTARILY WAIVED HIS RIGHT TO SILENCE AS SET FORTH IN MIRANDA V. ARIZONA
(1966), 384 U.S. 436.
 "III. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT INSTRUCTED THE VENIRE THAT IT WOULD BE THE JURY'S JOB TO DETERMINE WHETHER MR. PERKINS WAS GUILTY OR INNOCENT. (TRIAL TR 9.)
 "IV. THE PROSECUTOR'S STATEMENT DURING CLOSING ARGUMENT THAT MR. PERKINS WAS A DRUG DEALER WAS NOT ONLY IMPROPER, IT WAS DELIBERATELY DESIGNED TO FORCE A MISTRIAL, WHICH DEFENSE COUNSEL SHOULD HAVE SOUGHT AND THE TRIAL COURT SHOULD HAVE GRANTED. (TRIAL TR 354-357.)"
In his first assignment of error, appellant contends the court erred in denying his motion to suppress because the affidavit in support of the search warrant request was insufficient on its face to establish probable cause.
When reviewing a trial court's ruling on a motion to suppress, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592. An appellate court must independently determine, without deferring to the trial court's conclusions, whether as a matter of law the facts meet the applicable standard. State v. Klein (1991),73 Ohio App.3d 486, 488.
"In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." State v. George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus.
Neither the trial court nor the appellate court should substitute its judgment for that of the issuing magistrate by conducting ade novo review of whether the affidavit sufficiently provides robable cause for the warrant. Id. at paragraph two of the syllabus. Rather, as a reviewing court, our task, as was that of the trial court, is to ensure that the magistrate had a substantial basis for concluding that probable cause existed.Id. Doubtful or marginal cases should be resolved in favor of upholding the warrant. Id.
The United States Supreme Court has held that the totality of the circumstances must be examined in determining whether probable cause existed for a search warrant in Illinois v.Gates (1983), 462 U.S. 213.
Appellant contends that Detective Swartz misrepresented a crucial fact in his affidavit. Specifically, Detective Swartz stated in his affidavit that he saw the confidential informant enter 2222 Collingwood Boulevard, apartment No. 2. At the suppression hearing, Detective Swartz acknowledged that he could not see the confidential informant actually enter apartment No. 2. From his point of surveillance, Detective Swartz could only see the confidential informant enter the main door of the apartment building. Detective Swartz testified that his statement in the affidavit was based on the information the confidential informant gave him, that is, the confidential informant told Swartz he entered apartment No. 2 after he entered the main door of the apartment.
The fact that a statement contained in the affidavit was based upon information that the confidential informant related, is easily inferred. "An informant informs." See State v. Williams
(June 6, 2000), Allen App. No. 1-99-86. The informant's information and his past reliability together with Detective Swartz's surveillance and his previous experience provided a substantial basis for the magistrate to conclude that there was probable cause to issue a search warrant in this case. Accordingly, appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant contends that the court should have suppressed the statement made by appellant as fruit of the poisonous tree in that the search warrant was wrongly issued. Having already determined in appellant's first assignment of error that the search warrant at issue was lawfully issued, appellant's argument is without merit. Appellant next contends that his statement should have been suppressed in that he did not voluntarily waive his right to silence as set forth in Miranda v. Arizona (1966), 384 U.S. 436.
The rule set forth in Miranda, protects an individual who "is taken into custody or otherwise deprived of his freedom by the authorities in any significant way" from jeopardizing his Fifth Amendment privilege against self-incrimination. Specifically, the Miranda rule provides that before police officers may question a suspect in custody, the suspect:
 "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires." Id. at 479.
A suspect may waive his Miranda rights provided his waiver is knowing and intelligent. Edwards v. Arizona, (1981),451 U.S. 477, 483. The failure to request a lawyer or silence alone is not sufficient evidence of a valid waiver. Miranda,supra. Further, an express statement is not indispensable to a valid waiver. North Carolina v. Butler (1979), 441 U.S. 369. TheButler further explained:
 "An express written or oral statement of waiver of the right to remain silent * * * is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the [Miranda] case. As was unequivocally said in [Miranda], mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." Id. at 373.
The question of waiver is determined by the totality of the circumstances in each case, including the defendant's background, experience and conduct. Id. The state need only have proved that appellant waived his right to remain silent by a preponderance of the evidence. Colorado v. Connelly (1986),479 U.S. 157.
The Ohio Supreme Court has held that a Miranda waiver need not be in writing as long as the defendant effectively and intelligently waives his right to silence by his own independent decision to speak voluntarily and without coercion, actual or presumed. State v. Black (1976), 48 Ohio St.2d 262, 267, vacated in part Black v. Ohio (1978), 438 U.S. 910, 57 L.Ed.2d 1154,98 S.Ct. 3134. Many federal circuit courts have held that a defendant impliedly waives his Fifth Amendment right to remain silent merely by responding to police questioning after the Miranda warning has been administered. Allen v. Nix (C.A.8, 1995), 55 F.3d 414, certiorari denied Allen v. Hundley (1995), 516 U.S. 1014; UnitedStates v. Betts (C.A.7, 1994), 16 F.3d 748; United States v.Fontana (C.A.1, 1991), 948 F.2d 796; United States v. Gonzalez
(C.A.11, 1987), 833 F.2d 1464; United States v. Mattoni (C.A.5, 1983), 698 F.2d 691. Accord, State v. Washington (Jan. 10, 1997), Lake App. No. 95-L-128, unreported. Sergeant William Wauford of the Toledo Police Department's vice/narcotics division testified he was involved in executing the warrant at 2222 Collingwood on March 22, 1998. Wauford testified that because there was an outstanding felony arrest warrant out for appellant, he was immediately handcuffed and placed under arrest when the officers entered the apartment. Wauford testified that he read appellant his Miranda rights after Officer Lewandowski announced he found cocaine. Wauford testified that appellant said he understood his rights. Minutes later, Lewandowski asked appellant if there was any more cocaine in the house, explaining he would not want to tear apart the apartment looking for more cocaine if he did not have to. Appellant answered "that should be it." Wauford testified that appellant did not interrupt him while he was reading the Miranda warnings. Wauford further testified that appellant did not appear to be under the influence of alcohol or drugs and he never asked for an attorney.
Based on the forgoing we conclude that the court properly admitted appellant's statement. There is no evidence of police misconduct in this case. He was detained for mere minutes before he voluntarily answered Officer Lewandowski's question. Appellant was fully apprised of his Miranda rights and understood them. The evidence shows that he was of sound mind and body. Accordingly, appellant's second assignment of error is found not well-taken.
In his third assignment of error, appellant contends the court erred in its preliminary instruction to the jury before trial. Specifically, the court instructed the prospective jurors as follows:
 "The jury that's impaneled in this case will be required to make a determination as to the guilt or innocence of the defendant of these two charges."
Appellant contends that this instruction is prejudicial in that it implies a defendant must prove his innocence when in fact, the state has the burden of proving the defendant's guilt beyond a reasonable doubt.
In support, appellant cites to this court's decision inState v. Grosswiler (Mar. 31, 1989), Lucas App. No. L-88-108, unreported. In Grosswiler, this court found reversible error in a trial court's preliminary jury instructions. The court stated: "All right. And if you prove beyond a reasonable doubt that he's not guilty, can you make a finding of innocence?" This court found the above statement confusing as to which party carries the burden of proof. Further compounding the problem was the following question posed by defense counsel to the prospective jurors:
 "Would you require the defendant to prove himself innocent?
 "Juror: Yes."
This court found reversible error despite the fact that the judge correctly instructed the jury on burdens of proof when giving the jury charge at the end of trial.
We find the Grosswiler case distinguishable from the instant case. Clearly, in Grosswiler, the court misled prospective jurors on the issue of burdens of proof. The instruction at issue in this case does not involve burdens of proof. Moreover, soon after instructing the jury regarding guilt and innocence, the court stated:
 "It will be up to the jurors to weigh the credibility of the witnesses, to weigh the evidence and to make a determination as to whether or not the state has proven its case.
"* * *
"I will instruct you in three categories of instructions. The first are the general instructions that apply in every criminal case. This will have to do with the burden of proof, which is beyond a reasonable doubt, the presumption of innocence. All criminal defendants are presumed innocent unless and until the State proves them guilty beyond a reasonable doubt. And I will define that term for you."
Viewing the court's preliminary instructions in their entirety, we find them to be an accurate statement of the law. Accordingly, appellant's third assignment of error is found not well-taken.
In his fourth assignment of error, appellant contends the prosecutor engaged in misconduct during his closing argument. Appellant contends that based on the prosecutor's misconduct, appellant should have moved for and been granted a mistrial. Appellant contends that the prosecutor deliberately tried to force the court to declare a mistrial by accusing appellant of trafficking in drugs. This allegation was irrelevant as appellant was only charged with possession of drugs. The prosecutor's comments were as follows:
 "All right. Other items in the apartment, crack pipes, the scale. I think I'm allowed to say this because I think the evidence supports this, all right. This may be a shock to somebody, he not only possessed powder and crack, he was selling from that apartment. Huh? What do you think about that?"
Appellant's counsel promptly objected to the prosecutor's comments regarding trafficking. Appellant's counsel also objected to the fact that the prosecutor stood in front of one of the jurors and asked "what do you think about that?" The court sustained defense counsel's objections and instructed the jury to "disregard the last comments of the jury."
The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant, see State v.Lott (1990), 51 Ohio St.3d 160. The prosecutor's conduct must be reviewed in the context of the entire trial, see Darden v.Wainwright (1986), 477 U.S. 168. Furthermore, we must presume that the jury followed the curative instruction. See State v.Wilson (1972), 30 Ohio St.2d 199.
Viewing the prosecutor's comments in the context of the entire closing argument and given the fact that defense counsel objected and the court promptly issued a curative instruction, we conclude that appellant was not denied a fair trial. Appellant's fourth assignment of error is found not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.
 _____________________ Melvin L. Resnick, J.
James R. Sherck, J., Richard W. Knepper, P.J., Concur.