DECISION AND JUDGMENT ENTRY
On May 12, 1998, appellant, Eric W. Jackson, was indicted on one count of cocaine possession, a violation of R.C. 2925.11(A) and (C)(4)(d) and a felony of the second degree. A trial commenced on November 19, 1998.
Toledo Police Officer Kathy Beauregard testified that she was on duty May 1, 1998, when she was called to 2367 Warren Street, Toledo, Ohio. The building, which appeared abandoned, consisted of two stories. Beauregard testified that someone had called the police stating that there were several men standing on the front porch with guns and drugs. As Beauregard and her partner, Officer Mark Pauliff, approached the front porch, they saw a man standing in the doorway holding a "shiny object." The man then slammed the door. Beauregard walked to the rear of the house and hid behind a bush while other police officers prepared to enter the front of the house. While she was hiding, she watched as someone threw a clear plastic bag containing white material into another yard. Beauregard testified that she only saw someone's bare arm and leg when the bag was thrown from a balcony. She kept her eye on the bag and retrieved it when she felt she was safe. The bag, state's exhibit three, contained 10.01 grams of cocaine.
Toledo Police Officer Sam McMurray testified he was in the alley behind 2367 Warren Street when he saw appellant, shirtless, walk out onto the back balcony. Appellant was also wearing a pair of gray shorts. McMurray testified that appellant looked side to side before he threw a small plastic bag off of the balcony. Appellant then ran into the house.
Toledo Police Officer Otto Rectenwald testified he was called to 2367 Warren Street on a report that three males were on the front porch with a gun selling drugs. When he arrived, no one was on the porch and the front door was closed. Officer Rectenwald testified that he and his fellow officers knocked on the door but no one answered. The officers then kicked in the door and ordered all of the occupants of the house to get on the floor. Officer Rectenwald testified he also went to the upstairs apartments where he found three men, including appellant.
On May 12, 1998, appellant was indicted on one count of cocaine possession, a violation R.C. 2925.11(A) and (C)(4)(d) and a felony of the second degree. On November 23, 1998, a jury found him guilty. He was sentenced to six years in prison. Appellant now appeals setting forth the following assignment of error:
 "I. APPELLANT WAS DENIED A FAIR TRIAL, GUARANTEED BY THE DUE PROCESS PROVISIONS OF ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, AND THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, BY THE COMMENTS OF THE PROSECUTOR IN HIS REBUTTAL CLOSING THAT WERE SO INFLAMMATORY AS TO AROUSE THE PASSION AND PREJUDICE OF THE JURY AGAINST THE APPELLANT.
 "II. THE INEFFECTIVE ASSISTANCE OF COUNSEL PROVIDED THE APPELLANT DENIED HIM DUE PROCESS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS.
 "III. THE WARRANTLESS SEARCH OF THE PREMISES WAS UNCONSTITUTIONAL AND ALL EVIDENCE SEIZED AS A RESULT OF SAID SEARCH SHOULD HAVE BEEN SUPPRESSED AS `FRUITS OF THE POISONOUS TREE.'"
In his first assignment of error, appellant contends that he was denied his right to a fair trial when the prosecutor committed misconduct during his closing argument. Specifically, the prosecutor, in his closing, rebuttal argument, stated:
 "I don't know if you noticed during the session yesterday afternoon, but his beeper kept going off. Was it a potential employer that was calling, probably not."
Appellant's counsel timely objected and his objection was sustained. The court then instructed the jury to disregard the comment. Appellant now contends that the prosecutor made the comments in an effort to inflame the jury and to suggest that appellant is a drug dealer. Moreover, appellant contends that the prosecutor's remarks were not supported by the evidence.
The test for prosecutorial misconduct is whether the prosecutor's conduct at trial was improper and prejudicially affected the substantial rights of the defendant, see_State v. Lott (1990), 51 Ohio St.3d 160. The prosecutor's conduct must be reviewed in the context of the entire trial, see Darden v. Wainwright (1986), 477 U.S. 168. Furthermore, we must presume that the jury followed the curative instruction. See State v.Wilson (1972), 30 Ohio St.2d 199
In this case, a police officer testified he saw appellant in possession of cocaine. Following the prosecutor's statement regarding the beeper, the jury received a curative instruction. Based on the totality of the prosecutor's closing argument which reflected the evidence presented at trial, we conclude that the prosecutor's statement in and of itself did not prevent appellant from having a fair trial. Appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant contends he was denied effective assistance of counsel.
The standard for evaluating an ineffective assistance of counsel claim was enunciated by the Supreme Court of Ohio in State v. Bradley (1989),42 Ohio St.3d 136, paragraphs two and three of the syllabus, as follows:
 "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle
[1976], 48 Ohio St.2d 391; Strickland v. Washington
[1984], 466 U.S. 668, followed.)
 "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors. the result of the trial would have been different."
Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *."Bradley, supra, at 142 quoting Strickland, supra, at 689. Ohio presumes a licensed attorney is competent.
Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Counsel will not be deemed ineffective merely because a defendant is convicted and not acquitted. State v. Hunt (1984), 20 Ohio App.3d 310, 311.
Appellant first contends his counsel was ineffective in his cross-examination of Dale Roach, the Toledo Police Department's forensic laboratory administrator. Roach testified that the bag of cocaine at issue in the trial weighed 10.01 grams. However, Detective Peter Swartz testified that before the cocaine was given to the forensic laboratory, he weighed the cocaine and found it to be under ten grams. This difference is significant because the weight of the cocaine dictates the seriousness of the charge. Possession of cocaine weighing under ten grams is a third degree felony whereas possession of cocaine weighing over ten grams is a second degree felony. Based on Roach's findings, appellant was charged with a second degree felony.
Appellant contends that because Detective Swartz's findings would have resulted in a lesser charge for appellant, counsel was ineffective in not vigorously cross-examining Roach as to his weighing methods. This argument is without merit. Detective Swartz himself testified that his initial weighing of the cocaine was not reliable.
 "We're not positive on the weight. We have a scale in our office which we do indeed weigh the narcotics. Our scale is far from the scientific as Mr. Roach was spoke — speaking of."
Appellant next contends his counsel was ineffective in not requesting a more thorough Telfaire jury instruction given the fact that much of the evidence against appellant came from the identification testimony of Officer McMurray. A Telfaire instruction cautions the jury of the potential unreliability of eyewitness testimony. See United States v.Telfaire, (C.A.D.C. 1972), 469 F.2d 552. The Ohio version of theTelfaire instruction can be found in 4 Ohio Jury Instructions ("OJI") (1997), 41, Section 405.20(5). The Ohio Instruction lists several factors that the jury "may consider" in weighing identification testimony of witnesses:
 "1. Capacity of the witness, that is, the (age) (intelligence) (defective senses, if any,) and the opportunity of the witness to observe.
 2. The witness' degree of attention at the time he observed the offender.
 3. The accuracy of witness' prior description (or identification, if any).
 4. Whether witness had occasion to observe defendant in the past.
 5. The interval of time between the event and the identification.
 6. All surrounding circumstances under which witness has identified defendant (including deficiencies, if any, in lineup, photo display or one-on-one)."
The court, in the present case, instructed the jury on the above factors. In that the court's instruction mirrored the instruction found in the OJI, we conclude that the court's Telfaire instruction was adequate and that counsel was not ineffective in failing to request a more detailed instruction.
Appellant next contends his counsel was ineffective in failing to request the dismissal of a specific juror. During voir dire, the trial judge announced that he personally knew one of the potential jurors. The following exchange took place on the record:
"The court: Mr. Russel Doerr, we know each other?
Mr. Doerr: Right.
 The court: For about 25 or 30 years I would probably say, not that you're that old. You were real young when I first met you. Is there anything about the fact that we know each other that you feel would interfere with your ability to be fair and impartial as a juror in a case?
 Mr. Doerr: No.
 The court: In our private relationship sometimes you agree with things I say and sometimes you don't agree. In this particular case, what I say you have to agree with. Can you separate our personal relationship and decide this case based on the facts and law I will present in this case?
 Mr. Doerr: Yes."
Appellant argues that during a recess in the voir dire proceedings, he observed Mr. Doerr engage in a lengthy conversation with the trial judge in the judge's chambers.
Appellant contends he was prejudiced as a result of this conversation. Appellant, however, has presented no evidence that the conversation was prejudicial. Moreover, the "conversation" is not a part of the record before us. Based on the above quoted exchange between the trial judge and the juror, it cannot be said that appellant was prejudiced by the juror's presence on the jury.
Finally, appellant contends his counsel was ineffective in failing to file a brief detailing his standing as a resident of 2367 Warren Street. At the suppression hearing, appellant's counsel asked for leave to file a brief on the issue and leave was granted. The purpose of the brief was to argue against the warrantless search of the house. However, counsel never submitted said brief. Given the testimony of Officer McMurray, we do not find that the outcome of appellant's trial would have been different had counsel filed the brief. Accordingly, appellant's second assignment of error is found not well-taken.
In his third assignment of error, appellant contends that the warrantless search of 2367 Warren Street was unconstitutional and, therefore, all evidence seized as a result of the search should have been suppressed as fruit of the poisonous tree.
The Ohio Supreme Court has recognized seven exceptions to the requirement that a warrant be obtained prior to a search. Those exceptions are "(a) [a] search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; or (f) the plain-view doctrine," State v. AkronAirport Post No. 8975 (1985), 19 Ohio St.3d 49, 51.
At the suppression hearing, Officer Beauregard testified she was dispatched to 2367 Warren Street on a "weapons call." Specifically, someone called the police and reported they saw people with guns and drugs on the front porch of 2367 Warren Street. When Beauregard arrived, the porch was empty. She noticed that the front door was cracked open. Through the crack, she saw a man holding something shiny and metallic in his hand. When the man saw Beauregard, he slammed the front door. Beauregard testified she was not strong enough to break down the door herself. Minutes later, other officers arrived and broke open the door.
The question of whether an officer has reasonable suspicion or probable cause to make a warrantless arrest is to be reviewed by an appellate court de novo. Ornelas v. United States (1996), 517 U.S. 690, 699,116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, 920. An exigent circumstance is an emergency that prompts police to believe there is reasonable cause to enter a home without a warrant when a person in the home is in need of immediate aid or to prevent a situation threatening life or limb, or the immediate loss, removal, or destruction of evidence or contraband. Minceyv. Arizona (1978) 437 U.S. 385, 392-393, 98 S.Ct. 2408, 2413- 2414,57 L.Ed.2d 290, 299-301.
In the present case, the police officers were warned that there were people with guns involved in illegal activity at 2367 Warren Street. The house appeared to be abandoned in that the first floor windows were boarded up. Because the officers were on a "weapons call," the actions of the man at the front door, holding a shiny metal object, appeared highly suspicious. We therefore conclude that the officers had probable cause to enter 2367 Warren Street based on exigent circumstances. That is, to prevent life threatening injuries and/or to prevent the destruction of contraband. Appellant's third assignment of error is found not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced nor prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellant pay the court costs of this appeal.
Peter M. Handwork, J., Melvin L. Resnick, J. Mark L. Pietrykowski, J., JUDGES CONCUR.
 ____________________________ JUDGE