[Cite as *Prusak v. Bouton*, 2011-Ohio-5928.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96560**

## ANTHONY PRUSAK

PLAINTIFF-APPELLANT

vs.

## MICHELLE BOUTON

DEFENDANT-APPELLEE

**JUDGMENT:
AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-722611

**BEFORE:** Rocco, J., Stewart, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 17, 2011

**ATTORNEY FOR APPELLANT**

Brian D. Spitz
The Spitz Law Firm, LLC
4568 Mayfield Road
Suite 102
Cleveland, Ohio 44121


**ATTORNEYS FOR APPELLEE**

Timothy P. Roth
Timothy J. Fitzgerald
Gallagher Sharp
1501 Euclid Avenue
6th Floor, Bulkley Building
Cleveland, Ohio 44115


KENNETH A. ROCCO, J.:

{¶ 1} After a jury verdict in his favor in this action resulting from a motor vehicle accident, plaintiff-appellant Anthony Prusak appeals from the Cuyahoga County Court of Common Pleas order that denied his motion for a new trial.

{¶ 2} Prusak presents two assignments of error, arguing that the trial court improperly permitted defendant-appellee Michelle Bouton to introduce into evidence Prusak's medical records from his primary-care physician ("PCP"), and photographs of the vehicles' conditions after the accident. Prusak asserts that these exhibits influenced

the jury to award him inadequate damages on his negligence claim, and, thus, he was entitled to a new trial.

{¶ 3} Upon a review of the record, however, this court cannot conclude the trial court abused its discretion in determining the admissibility of the evidence. Prusak's assignments of error, consequently, are overruled. The trial court's order is affirmed.

{¶ 4} The motor vehicle accident took place on the morning of April 11, 2008. Prusak, who was 38 years old, testified he was traveling in his Cadillac "SUV" on Richmond Road on his way to work. Prusak stopped for a red light at the Emery Road intersection. He wore his seatbelt, and had his foot on the brake.

{¶ 5} Prusak stated he glanced at his rearview mirror and saw Bouton's vehicle, also an SUV, coming toward his rear bumper; it appeared Bouton was making "a quick merge" into his lane. Bouton failed to stop in time.

{¶ 6} Prusak described the resulting collision as a "bam" that forced his body "backwards and then * * * frontwards." Prusak immediately "hit [his] On-Star button and then contacted On-Star to ask that the Warrensville Heights Police department come to the scene, [he] was involved in an accident." He obeyed the instruction to wait in his vehicle. He was "in shock" from the suddenness of the incident.

{¶ 7} According to Bouton, she pulled up in her Ford Expedition behind Prusak's vehicle as it waited at the traffic light. Bouton testified she stopped approximately five feet away. She noticed vehicles moving next to her in the turning lane, so she placed her

foot on her gas pedal and accelerated slightly, but then realized the light for her lane remained red, so she "hit the brakes as hard as [she] could."

{¶ 8} Bouton estimated she was "going about 5 miles an hour tops" when her SUV struck Prusak's. Bouton allowed that her "neck went back and forth" at the impact. Nevertheless, none of her three young children in the rear seat seemed "to [have] realized what happened." Once she assured herself her children were uninjured, she exited her SUV, went to Prusak's window, and apologized. Prusak informed her the police were on their way.

{¶ 9} Bouton looked at the two vehicles at that time. Prusak's rear bumper had scrapes and possibly a dent. Although Bouton saw no damage to the front of her SUV, she later discovered the "small grill on the bottom" had been displaced due to a broken plastic clip.

{¶ 10} After the police arrived, they issued a citation to Bouton. Prusak proceeded to his workplace, where he telephoned his PCP and obtained a 1:00 p.m. appointment. The record reflects the PCP made the following pertinent notations about the visit on Prusak's medical chart, which is the subject of Prusak's first assignment of error:

{¶ 11} "Reason for visit: CAR ACCIDENT THIS MORNING-BACK PAIN

{¶ 12} "S[tates]: He got hit from behind while sitting at the light at Richmond and Emery this morning. He has some soreness in the left side of his back. Also, he is concerned about his cholesterol. * * *

{¶ 13} "O[bservation]: Physical exam reveals * * * no acute distress. There is faint tenderness over the left interior lateral ribcage posteriorly. Back reveals no CVA or vertebral tenderness.

{¶ 14} " * * *

{¶ 15} "Diagnosis:   724.5 BACKACHE NOS

{¶ 16} " * * *

{¶ 17} "Comments: He has a minor back strain, which should heal quickly, but I warned him he may have increased pain and stiffness in the neck and lower back in the morning. He can use Skelaxin[1] pm if that occurs, and I advised he apply heat to those areas that bother him. * * * ."

{¶ 18} On his own initiative, Prusak subsequently decided to see a chiropractor. Prusak's testimony indicated he had confidence in chiropractic treatment, since he had used it often previously.

---

[1]A muscle relaxant physicians prescribe to relieve pain and discomfort caused by muscle strains and sprains.

{¶ 19} Prusak went to his first appointment with Dr. Lori Christian on April 17, 2008. He indicated he injured his back in a car accident, filled out some "paperwork," and submitted to "x-rays" and a physical examination.

{¶ 20} Christian testified she subsequently diagnosed Prusak as "suffering from a cervical sprain/strain." Christian testified Prusak "presented [with] tremendous muscle spasm" that resulted from the accident.

{¶ 21} Christian acknowledged that on the questionnaire Prusak filled out for her during his first visit, he described his pain not as acute, but as "dull" and "achy." Christian also conceded that Prusak's x-rays showed that, prior to the accident, he already had developed spinal curvature, spondylosis,[2] and some cervical degeneration. Christian nevertheless maintained the accident "exacerbated" Prusak's "previous condition." Christian's invoices for her treatment of Prusak show that she performed several chiropractic procedures on him during each office visit, and that, at times, he appeared for treatment every other day.

{¶ 22} On May 6, 2008, Prusak telephoned his PCP to provide an update on his condition. The PCP noted on Prusak's report that Prusak was seeing Christian, and her chiropractic treatment was helping, but the x-rays showed a curvature, and he had

---

[2] According to the National Institutes of Health "Medline Plus" website, cervical spondylosis is a disorder in which there is abnormal wear on the cartilage and bones of the neck, and is a common cause of chronic neck pain.

"residual soreness." Prusak's PCP wanted copies of the x-ray reports and told him to schedule an office visit.

{¶ 23} Prusak continued his chiropractic treatments. He eventually saw his PCP again on June 10, 2008. In the patient chart, Prusak's PCP indicated that, despite the chiropractic treatments, Prusak still had "some lingering pain in his flanks" and felt "stiff and sore" upon rising in the morning. Prusak also had "started on [statin cholesterol medication] Zocor shortly before the accident."

{¶ 24} During the PCP's examination of Prusak, the PCP observed "no lumbar or perispinal tenderness," but indicated Prusak had "tenderness" over his rib cage.

{¶ 25} Prusak's PCP stated the following in the "comments" section of his patient's chart:

{¶ 26} "His pain is not typical of what I'd expect post-MVA, and I doubt the chiropractor is doing him any good after 2 months. Most likely has a statin myopathy.[3] I advised him to stop the Zocor for a week and call with an update. If that fixes the problem, then we can try a different statin. * * * "

{¶ 27} Prusak's PCP next noted on the patient's medical chart that Prusak telephoned on June 17, 2008. Prusak indicated he "stopped the Zocor last [week]. He does not feel so 'crampy' and his lower rib cage is not quite as sore as last week. He also

---

[3]The Am. Heritage Stedman's Med. Dictionary (1995), defines myopathy as "[a]ny of various abnormal conditions * * * of the muscular tissues * * * ."

has not seen his chiropractor. * * * " Prusak's PCP wanted Prusak to "stay off another week and then call back with another update."

{¶ 28} Prusak's medical chart indicates he obeyed the directive; he called his PCP on June 27, 2008 to state: "He has been off the Zocor for 2 weeks now and the achiness has gone away. Pt. states that he feels 'much, much better' although he does have some small pain around the rib cage area. [He] would like to know what the next step should be. * * * "

{¶ 29} Below these comments, Prusak's PCP noted on the chart that he wanted Prusak to try Lipitor. Prusak's chart indicates he obtained a sample of that medication from his PCP.

{¶ 30} According to Christian's records, Prusak did not appear for chiropractic treatment between June 9, 2008 and June 27, 2008. On the latter date, he resumed his frequent visits to her office. He eventually ceased chiropractic treatments on October 27, 2008. By that time, he owed Christian a balance of $3,136.39.

{¶ 31} Prusak ultimately filed this action, claiming that his back problems resulted from Bouton's negligence. Bouton eventually stipulated that she was negligent, and the matter was scheduled to proceed to a jury trial on the issues of proximate cause and damages.

{¶ 32} A few days before the scheduled trial date, Prusak filed a motion in limine, seeking to exclude certain evidence Bouton intended to present in her defense, viz.,

photos taken after the accident of the condition of the SUVs. Prusak argued the jury should not consider the photos of the SUVs without expert testimony to explain the physical forces involved in a motor vehicle accident. The trial court overruled Prusak's motion, and, despite his renewal of his motion during trial, the court permitted Bouton to introduce the photos.

{¶ 33} During trial, Prusak raised another objection when Bouton sought to introduce the medical records she obtained from his PCP. Prusak argued that the records lacked verification. Bouton pointed out that Prusak attached those records to his trial brief, and listed them as exhibits he intended to introduce. Prusak then argued Bouton's use of the records would violate his right of confrontation. The trial court overruled Prusak's objection.

{¶ 34} In his case-in-chief, Prusak presented Christian's testimony and testified in his own behalf. Bouton thereafter testified in her defense. Upon considering the evidence, the jury found in Prusak's favor, but, instead of an award of damages in the amount of $51,000, as he suggested, the jury awarded him $1500.

{¶ 35} Prusak filed a motion for a new trial, arguing that the inadequate damage award was due to the trial court's error in admitting the medical records; he raised no argument with respect to the photographs. Bouton filed an opposition brief. Ultimately, the trial court denied Prusak's motion. In its opinion attached to the journal entry, the

trial court found the medical records evidence was admissible pursuant to Evid.R. 803(6) and *Smith v. Dillard's Dept. Stores, Inc.*, Cuyahoga App. No. 75787, 2000-Ohio-2689.

{¶ 36} Prusak filed a timely appeal from the trial court's final judgment. He presents the following two assignments of error.

{¶ 37} "**I. The trial court abused its discretion by allowing hearsay and unqualified medical opinion contained in Prusak's medical records to be admitted into evidence at trial, resulting in prejudicial error.**

{¶ 38} "**II. The trial court abused its discretion by allowing photographs of parties' vehicles into evidence without the expert testimony to correlate the property damage to Prusak's injuries as that was the sole issue for jury determination at trial.**"

{¶ 39} Prusak's assignments of error challenge the court's decision during trial to admit the disputed evidence, rather than the court's ultimate decision to deny his motion for a new trial. This court addresses his arguments pursuant to *Transamerica Ins. Co. v. Nolan* (1995), 72 Ohio St.3d 320, 649 N.E.2d 1229 and *Barksdale v. Van's Auto Sales, Inc.* (1988), 38 Ohio St.3d 127, 527 N.E.2d 284.

{¶ 40} Prusak acknowledges that a trial court is given broad discretion in the decision to admit or exclude evidence, and this court cannot reverse that decision unless the trial court abused its discretion. *Wingfield v. Howe*, Cuyahoga App. No. 85721, 2006-Ohio-276, ¶23, citing *State ex rel. Sartinin v. Yost*, 96 Ohio St.3d 37,

2002-Ohio-3317, 770 N.E.2d 584. An abuse of discretion implies that the trial court's decision was unreasonable, unconscionable, or arbitrary. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. While Prusak contends that standard is met in this case, this court disagrees.

{¶ 41} Prusak initially asserts that his PCP's medical "opinions," which were expressed on his medical chart and went beyond the strict confines permitted by Evid.R. 803(4),[4] should have been excluded from evidence. He argues the trial court wrongly decided this evidence was admissible pursuant to Evid.R. 803(6).

{¶ 42} Like Evid.R. 803(4), Evid.R. 803(6) is one of the several exceptions to the general hearsay rule.[5] It is commonly referred to as "the business records exception," and states in pertinent part that a business record is "[a] memorandum, report, [or] record, * * * in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, [or] record, * * * as provided by Rule 901(B)(10) * * * ." See, also, R.C. 2317.40.

---

[4]Evid.R. 803(4) permits the introduction into evidence of statements made by a declarant for the purposes of medical diagnosis or treatment. In this case, Prusak was the declarant pursuant to Evid.R. 803(4).

[5]The general hearsay rule, found in Evid.R. 801(C), defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."

{¶ 43} The parties in this case stipulated to the authenticity of Prusak's medical records, therefore, Prusak asserts the "opinions" his PCP expressed fell short of the standard for admissibility set forth in *Hytha v. Schwendeman* (1974), 40 Ohio App.2d 478, 320 N.E.2d 312. At the syllabus, the *Hytha* court set forth several requirements in order for the record of a medical diagnosis made by a physician to be admissible into evidence. These included all of the following:

{¶ 44} 1) The record must have been a systematic entry kept in the records of the physician made in the regular course of business;

{¶ 45} 2) The diagnosis must have been the result of well-known and accepted objective testing and examining practices and procedures that are not of such a technical nature as to require cross-examination;

{¶ 46} 3) The diagnosis must not have rested solely upon the subjective complaints of the patient;

{¶ 47} 4) The diagnosis must have been made by a qualified person;

{¶ 48} 5) The evidence sought to be introduced must be competent and relevant;

{¶ 49} 6) If the use of the record is for the purpose of proving the truth of matter asserted at trial, it must be the product of the party seeking its admission; and,

{¶ 50} 7) It must be properly authenticated.

{¶ 51} This court reviewed *Hytha* in *Smith,* and questioned the extent to which the earlier case retained validity in light of then-current Ohio law. Moreover, after this court

issued its opinion in *Smith*, on May 1, 2002, the Ohio Supreme Court changed its Rules for the Reporting of Opinions. Rep.R. 1(C) states that the syllabus set forth in *Hytha* "is not the controlling statement of the points of law decided, but is merely a research and indexing aid." Rep.R. 4(A) further states that "distinctions between 'controlling' and 'persuasive' opinions of the courts of appeals based merely upon whether they have been published in the Ohio Official reports are abolished."

**{¶ 52}** More recently, this court addressed the continued applicability of the *Hytha* factors in *Peffer v. Cleveland Clinic Fdn.*, Cuyahoga App. No. 94356, 2011-Ohio-459. This court commented that, although the factors constituted "instructive guidelines," they were not always appropriate, especially with respect to a physician's review of "factual determinations."

**{¶ 53}** In this case, as in *Peffer*, Prusak's PCP made factual determinations in his patient's chart. The PCP did not refer to any other medical reports; he made his determinations based upon statements Prusak provided in seeking medical treatment, his objective observations of his patient, and in light of his knowledge of Prusak's medical history. Hence, "[th]eir trustworthiness is bolstered by the fact that they were made at the time of treatment and were documented in the normal course of caring for [the patient.]" Id., ¶25; cf., *Wingfield*; *Ruth v. Moncrief*, Montgomery App. No. 18479, 2001-Ohio-1709; *Bush v. Burchett* (June 13, 1995), Athens App. No. 94CA2237.

**{¶ 54}** Under these circumstances, the trial court did not abuse its discretion in deciding Prusak's medical records constituted admissible evidence. Prusak's first assignment of error, accordingly, is overruled.

**{¶ 55}** Prusak next asserts that the photographs of the vehicles should not have been admitted without expert testimony to show the correlation between the damage and the injury. On the facts of this case, his assertion cannot be countenanced.

**{¶ 56}** This court addressed a nearly identical argument in *Wingfield* and made the following pertinent observations at ¶11-14:

**{¶ 57}** "The admissibility of photographs is left to the sound discretion of the trial court. See Evid.R. 403 and 611(A); see also *Maybaum v. Rakita*, Cuyahoga App. No. 80613, 2002-Ohio-5338; *State v. Wilson* (1972), 30 Ohio St.2d 199, 203-204, 283 N.E.2d 632. Therefore, we review a trial court's decision to admit or deny photographic evidence only for an abuse of discretion. *Nielsen v. Meeker* (1996), 112 Ohio App.3d 448, 450, 679 N.E.2d 28. Wingfield argues that the trial court erred by allowing into evidence a photograph depicting 'minimal' damage to Wingfield's vehicle without expert testimony to establish that there was a correlation between the 'minimal' damage to the vehicle and Wingfield's physical injuries. In support, Wingfield cites this court's decision in *Hastie v. Dohar*, Cuyahoga App. No. 79456, 2002-Ohio-812, and *Morales v. Petitto* (Nov. 9, 2000), Cuyahoga App. Nos. 77326 and 77532.

{¶ 58} "In *Hastie*, supra, this court held that when a defense seeks to minimize the injury to the plaintiff's person by showing minor injury to the vehicle via photographs, an expert *may* be required. Importantly, this court held that the facts should dictate when an expert is needed, and the expert question should be resolved by the trial court. Id.

{¶ 59} "Next, Wingfield cites to *Morales*, supra, in which this court upheld the exclusion of photographs depicting an absence of damage to the exterior of the plaintiff's automobile. The trial court excluded the photographs on the grounds that they did not accurately depict the full extent of the damage to the vehicle, as the vehicle's interior was considerably more damaged than its exterior, thus the photographs were unduly prejudicial. * * *

{¶ 60} "In this case, Wingfield testified regarding the collision and the 'violent' impact * * * [with] Howe's vehicle. Certainly, Howe is entitled to present evidence to rebut Wingfield's testimony. See *Erie Insurance Co. v. Cortright*, Ashtabula App. No.2002-A-0101, 2003-Ohio-6690. Therefore, we cannot say that the trial court abused its discretion in admitting the photograph." (Emphasis in original; underscoring added.)

{¶ 61} This court also made another important observation in *Wingfield* at ¶24:

{¶ 62} "In an action for negligence, the *plaintiff has the burden to prove*, by a preponderance of the evidence, that the *defendant's negligence was a direct or proximate cause of his injuries*. *Garcea v. Woodhull*, Wayne App. No. 01CA0069, 2002-Ohio-2437. * * * [T]he issue of causal connection between an injury and a specific

subsequent physical disability * * * must be established by the opinion of [expert] witnesses competent to express such opinion. *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 17, 261 N.E.2d 114.* * * ."

{¶ 63} To paraphrase *Wingfield*, it is *plaintiff's* burden of proof to establish negligence; thus, if the issue arises, *his* case must include proof that the physics involved in the accident led to the seriousness of his injuries. A trial court does not abuse its discretion merely by allowing the defense to introduce photographs that fairly depict the damage the vehicles sustained in the accident. *Wingfield*; *Krannitz v. Harris*, Pike App. No. 00CA649, 2001-Ohio-2683; see, also, dissent in *Hastie*.

{¶ 64} "Damage awards in personal injury actions are particularly within the province of the jury * * * ." *Kolomichuk v. Grega* (Sept. 20, 2001), Cuyahoga App. No. 78870. From the evidence properly admitted in this case, the jury reasonably concluded the impact of the accident was insufficient to cause Prusak to need the many chiropractic treatments he sought, despite Christian's testimony.

{¶ 65} Accordingly, Prusak's second assignment of error also is overruled.

{¶ 66} The trial court's order is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

MELODY J. STEWART, P.J., and
SEAN C. GALLAGHER, J., CONCUR